# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 01-3286

IN RE: WAYNE K. CRAWFORD,

*Debtor-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 01-C-0147-C—**Barbara B. Crabb**, *Chief Judge.*

ARGUED JANUARY 13, 2003—DECIDED APRIL 1, 2003

Before POSNER, KANNE, and DIANE P. WOOD, *Circuit Judges.*

POSNER, *Circuit Judge.* Wayne Crawford appeals from the district court's affirmance of the bankruptcy court's refusal to confirm his Chapter 13 plan. Chapter 13 is a counterpart to Chapter 11 (reorganization) but designed for individuals of modest means. *In re Heath*, 115 F.3d 521, 522 (7th Cir. 1997). It enables an individual, as an alternative to the liquidation of his assets, to submit for approval by the bankruptcy court a plan for paying his creditors as much as possible over a period of years, upon completion of which he is given a discharge of his remaining dischargeable debts. Crawford's appeal requires us to consider the circumstances in which and the degree to which a Chapter 13 debtor may shift the burden of a nondischargeable debt from his shoulders to those of his unsecured creditors by invocation of 11 U.S.C. § 1322(b)(1), which provides that a Chapter 13

plan may "designate a class or class of unsecured claims . . . but may not discriminate unfairly against any class so designated." Classification is not unique to Chapter 13; it is available under other chapters of the Bankruptcy Code as well. See 11 U.S.C. §§ 901(a), 1122(a), 1222(b)(1).

Crawford's nonpriority unsecured debts consist of some $19,000 owed the IRS; $18,000 owed the county as a result of Crawford's having been delinquent for a period in his child support payments (he is now current) and the county's having paid welfare to the mother and taken in exchange an assignment of her entitlement to child support; and $500 owed to a pair of trade creditors. The debt that Crawford owes the county is nondischargeable. 11 U.S.C. § 523(a)(5)(A).

The plan proposed to divide Crawford's debts into two classes, one consisting of the debt to the county and the other of the other debts. The county debt would be paid first and only after it was paid in full would he begin to pay the debts of the second class. Originally the plan envisaged that over the course of its three years the county debt would be paid in full with enough left over to pay the other unsecured creditors between 3 and 6 percent of what they were owed. But this was contingent on Crawford's prevailing in a dispute he had with the IRS. He did not prevail and as a result the plan had to be amended. Under the amended plan, the county debt will not be paid in full but two-thirds of it will be paid, while the other unsecured creditors will get nothing at all, whereas without the preferred treatment of the county debt but with the same aggregate level of periodic payment as under the amended plan each unsecured creditor would receive roughly 32 cents on the dollar.

Section 1322(b) of the Bankruptcy Code, while forbidding as we have said classifications that discriminate unfairly

against creditors, does not explain what "unfairly" means in this context. The courts have striven to formulate a more precise standard for determining the legitimacy of classifications proposed by Chapter 13 debtors, but without success.

A number of cases use a four-factor test: "1) whether the discrimination has a reasonable basis; 2) whether the debtor can carry out a plan without the discrimination; 3) whether the discrimination is proposed in good faith; and 4) whether the degree of discrimination is directly related to the basis or rationale for the discrimination." *In re Leser*, 939 F.2d 669, 672 (8th Cir. 1991); see, e.g., *In re Williams*, 253 B.R. 220, 225 (Bankr. W.D. Tenn. 2000); *In re Thibodeau*, 248 B.R. 699, 704-05 (Bankr. D. Mass. 2000). With respect, this test is empty except for point 2, which does identify an important factor bearing on the reasonableness of a classification, as we shall illustrate shortly.

Another test one finds in some cases is whether the debtor has a "legitimate" basis for the classification. *In re Brown*, 152 B.R. 232, 237-40 (Bankr. N.D. Ill.), reversed under the name *McCullough v. Brown*, 162 B.R. 506 (N.D. Ill 1993); *In re Lawson*, 93 B.R. 979, 984 (Bankr. N.D. Ill. 1988). This, if it means anything, leans too far in favor of the debtor (as Judge Shadur explained in his opinion reversing the bankruptcy judge's decision in the *Brown* case), as it gives no consideration to the interest of creditors. The first test, the four-factor one, also fails to mention the creditors' interests, at least explicitly.

A third test insists that the classification presumptively give the disfavored creditors at least 80 percent of what they would get without the classification, *In re Sullivan*, 195 B.R. 649, 656 (Bankr. W.D. Tex. 1996), and a fourth test adds a similar consideration as a fifth factor to the four-factor *Leser* test. E.g., *In re Chacon*, 223 B.R. 917, 922 (Bankr. W.D. Tex. 1998); *In re Strausser*, 206 B.R. 58, 60 (Bankr. W.D.N.Y. 1997);

*In re Kolbe*, 199 B.R. 569, 572-75 (Bankr. D. Md. 1996). The third test is arbitrary, and the fourth test makes the first collapse of its own weight.

We haven't been able to think of a good test ourselves. We conclude, at least provisionally, that this is one of those areas of the law in which it is not possible to do better than to instruct the first-line decision maker, the bankruptcy judge, to seek a result that is reasonable in light of the purposes of the relevant law, which in this case is Chapter 13 of the Bankruptcy Code; and to uphold his determination unless it is unreasonable (an abuse of discretion). This approach has support in *In re Bentley*, 266 B.R. 229, 239-40 (B.A.P. 1st  Cir. 2001), and 8 *Collier on Bankruptcy* ¶ 1322.05[2] (15th ed. 2002), as well as in the statutory language of "unfair" discrimination against creditors. It is true that the use of "fair" in a statute or a legal doctrine need not preclude judicial development of a particularized standard; the "fair use" doctrine of copyright law and the "duty of fair representation" in labor law have considerable structure, and other examples could be given. But success has not attended efforts to give comparable structure to the classification provision of Chapter 13.

Mention of the statute's language should at least serve to remind bankruptcy judges that Chapter 13 is designed for the protection of creditors as well as debtors. *In re Andrews*, 49 F.3d 1404, 1407 (9th Cir. 1995); *First Nat'l Fidelity Corp. v. Perry*, 945 F.2d 61, 64 (3d Cir. 1991); *McCullough v. Brown, supra*. It is true that only the debtor can invoke Chapter 13. But he may not use it to deny consideration of the legitimate interest of creditors in repayment. *In re Divine*, 127 B.R. 625, 629 (Bankr. D. Minn. 1991); see also *In re Scotten*, 281 B.R. 147, 150 (Bankr. D. Mass. 2002); *In re Virden*, 279 B.R. 401, 409 (Bankr. D. Mass. 2002). This point implies, however, that if without classification the debtor is unlikely to be able to

fulfill a Chapter 13 plan and the result will be to make his creditors as a whole worse off than they would be with classification, then classification will be a win-win outcome. Suppose the debtor is a truck driver and one of his creditors is the state driver's license bureau which unless paid in full will yank his license, with the consequence that he won't have earnings out of which to make the payments called for in his plan. Or suppose the creditor is a supplier of the tools of the debtor's trade, and unless paid in full will cut him off and thereby prevent him from plying his trade, again with the result of depriving him of the earnings he needs to fund his plan. The creditor might be the supplier of the bottled gas that the debtor uses to heat his home, and if not paid in full will refuse to sell him more gas. (We use this example rather than that of natural gas or electricity because a public utility is not permitted to refuse to restore service because of nonpayment of fees incurred before the filing of a bankruptcy petition, 11 U.S.C. § 366 (a) (2003); *In re Spencer*, 218 B.R. 290, 293-94 (Bankr. W.D. N.Y. 1998); *In re Whittaker*, 84 B.R. 934, 942 (Bankr. E.D. Pa. 1988), but a supplier of bottled gas is not a public utility.) All these are substantial cases for a classification that will permit one creditor or class of creditors to be paid disproportionately to the rest because the creditors as a whole will be better off and so will the debtor. *In re Gallipo*, 282 B.R. 917, 923 (Bankr. E.D. Wash. 2002); *In re Davis*, 209 B.R. 893, 896 (Bankr. N.D. Ill. 1997); *In re Ross*, 161 B.R. 36, 38 (Bankr. C.D. Ill. 1993).

At the other extreme is a nondischargeable debt consisting of a fine imposed, or restitution ordered, in respect of a criminal fraud that the Chapter 13 debtor committed, together with other unsecured debts, and he proposes a classification under which the nondischargeable debt will be paid in full and the other creditors will receive nothing at all. Approval of such a plan would be unreasonable. *In re Bennett*, 237 B.R. 918, 924 (Bankr. N.D. Tex. 1999); *In re*

*Williams*, 231 B.R. 280, 283 (Bankr. S.D. Ohio 1999); *In re Limbaugh*, 194 B.R. 488, 493-94 (Bankr. D. Ore. 1996). The effect of the plan if approved in such a case would be to make the debtor's other unsecured creditors pay his fine or restitution!

Crawford's rejected plan lies in between our examples, but it is closer to the second and close enough to require us to affirm its rejection. The nonpayment of child support is a serious matter and in fact a nationwide problem, which is why Congress has determined that child-support debts, of which the debt owed the county is a version, are non-dischargeable. The retributive and deterrent interests are weaker than in the case of a deliberate criminal act, since nonpayment can be involuntary as well as voluntary; but no reason has been shown for allowing Crawford to shift two-thirds of this debt to his other unsecured creditors. Had he proposed to carve down his nondischargeable debt to the principal owed on it (roughly $12,000), and had he shown that without such a carve down he would be staggering under such a crushing load of undischarged debt as to make it inevitable or nearly so that he would soon be back in bankruptcy court, this time under Chapter 7, the bankruptcy court might deem such a plan reasonable and we presumably would affirm—especially if the unsecured creditors would do worse in Chapter 7 than they would do under Crawford's revised Chapter 13 plan. It is true that he has a previous Chapter 7 discharge and so must wait six years from the filing of his previous Chapter 7 petition before seeking another such discharge. 11 U.S.C. § 727(a). But although we don't know the exact date of his previous filing, we do know that he received his discharge in September 1997 and this means that he'll be eligible to file another Chapter 7 petition no later than September of this year—for all we know, he can do so right now.

We do not hold that child-support debts, or, as in this case, a debt arising from the assignment of the right to child support, cannot be classified. Nor do we hold that Crawford cannot formulate an acceptable plan that would involve an element of classification. We hold only that the bankruptcy court did not abuse its discretion in rejecting, as an unfair discrimination against his other creditors, the plan he proposed, which would if approved have shifted two-thirds of his nondischargeable debt to his other creditors, leaving them with nothing.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*