2017 IL App (2d) 160631
No. 2-16-0631
Opinion filed March 29, 2017

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| MASUD M. ARJMAND, | ) | of Du Page County. |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| and | ) | No. 09-D-1168 |
| | ) | |
| MUNEEZA R. ARJMAND, | ) | Honorable |
| | ) | Timothy J. McJoynt, |
| Respondent-Appellee. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices Jorgensen and Spence concurred in the judgment and opinion.

**OPINION**

¶ 1    The petitioner, Masud Arjmand, appeals from orders entered by the circuit court of Du Page County on October 9, 2014, April 22, 2016, and August 4, 2016. The first two orders awarded the respondent, Muneeza Arjmand, interim attorney fees pursuant to section 501(c-1) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/501(c-1) (West 2012)). In the final order being appealed, the trial court denied Masud's motion to quash garnishment proceedings instituted by Muneeza in order to collect the interim attorney fees and ordered the turnover of funds to pay those fees. Because we lack jurisdiction to review any of these orders, we dismiss the appeal.

¶ 2                                    I. BACKGROUND

¶ 3    We begin with the relevant procedural history.  In 2009, Masud filed a petition for dissolution of his marriage to Muneeza.  A short time later, the parties entered into a marital settlement agreement, which was incorporated into the judgment for dissolution entered in July 2009.  However, in 2011, Muneeza filed a petition under section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2010)), seeking to vacate the judgment for dissolution on the basis that it was unconscionable.  The trial court granted the petition, vacating everything except the legal dissolution of the parties' marriage.  Masud appealed this order.  In 2013, we affirmed the trial court's vacation of most of the prior judgment of dissolution.  *In re Marriage of Arjmand*, 2013 IL App (2d) 120639.  The case returned to the trial court for further proceedings.  Although those proceedings have been going on for some years, a trial of the issues remaining in the dissolution has yet to occur.

¶ 4    On August 14, 2014, Muneeza petitioned for interim attorney fees pursuant to sections 501(c-1) and 508(a) of the Act (750 ILCS 5/501(c-1), 508(a) (West 2012)).  In her petition, Muneeza detailed the numerous matters litigated by the parties, which had resulted in significant attorney fees.  She asserted that she was in need of assistance to pay her attorney fees, that Masud had income of over $1 million per year, and that the marital estate had substantial liquid assets from which attorney fees could be paid.  She sought $303,590 in past fees due and owing; $100,000 in anticipation of future fees reasonably necessary to prepare for trial, and $87,000 for anticipated expenses for expert witnesses, for a total of about $490,000.  Masud filed a response disputing her assertions and objecting to any interim award of attorney fees.

¶ 5    On October 9, 2014, the trial court conducted an evidentiary hearing on the petition for interim attorney fees.  Masud sought to present several witnesses, including accountants and real estate appraisers.  He argued that, in order to decide Muneeza's petition, the trial court was required to determine the value of the marital estate (which included almost a dozen residential

and commercial properties) as well as the marital or nonmarital nature of all of the parties' assets. The trial court rejected this argument, stating that the resolution of the interim fee petition did not require it to make a determination on those issues, which would more properly be addressed at the eventual trial:

"[T]he purpose of today's hearing is to level the playing field. The legislative intent is clear. It's supposed to be an expeditious, quick way to resolve the issue and to level the playing field with minimal evidence to be presented to the Court. If you allow either party to get in too deeply into the economic aspects of the case, it defeats the whole purpose. The purpose of the statute is to make sure that each party has sufficient funds to retain attorneys and retain expert witnesses to litigate this case."

The trial court therefore limited the parties to presenting evidence of their current economic circumstances, including their assets, incomes, and expenditures. The evidence presented included a September 2014 financial disclosure statement by Masud, which reflected appraisals that had valued his real estate holdings as of July 2009 (the date of dissolution). The statement listed the properties' total net value as about $5.5 million; Masud also had various investments and accounts worth about $6.5 million, although $6.2 million of these assets were "founder's shares" of Accenture, which were subject to restrictions on liquidation. Masud testified that his access to funds was extremely limited, due in part to a restraining order entered earlier in the dissolution case, and he argued that most of the shares in his accounts were nonmarital anyway. As to income, the statement showed that Masud was self-employed and had a gross annual income of over $224,000 (primarily from investments and businesses), although it also stated that his gross income was reduced by: (1) about $102,000 in taxes and court-ordered support for Muneeza, and (2) over $173,000 in unspecified business expenses. Muneeza testified that she had no access to any marital assets. She had a net income of about $50,000 per year.

¶ 6    At the close of the hearing, the trial court entered an order granting Muneeza's petition in an amount significantly lower than her request: $130,000 ($110,000 in attorney fees and $20,000 for expenses for expert witnesses).   The order required Masud to sell some of the founder's shares of Accenture in order to pay the award.

¶ 7    Both parties filed motions to reconsider the October 2014 award of interim attorney fees. Muneeza argued that Masud's filings and testimony at the evidentiary hearing understated two of the relevant factors in determining interim attorney fees: his current assets and liabilities, and the amount he had paid his own attorneys and expert witnesses.   Muneeza asked that Masud be required to file corrected affidavits and that the trial court increase its award.   Further, Muneeza asserted that Masud had made no effort to sell his founder's shares as ordered and had not responded to her attorney's requests for information.   Finally, Muneeza asked the trial court to clarify that its award of interim attorney fees was an enforceable judgment pursuant to section 508(a) of the Act.   See 750 ILCS 5/508(a) (West 2014) ("The court may order that the award of attorney's fees and costs (including an interim or contribution award) shall be paid directly to the attorney, who may enforce the order in his or her name, or that it shall be paid to the appropriate party," and ["j]udgment may be entered and enforcement had accordingly").   It does not appear that Masud filed any written response to this motion.   However, Masud later agreed that he had understated his attorney fees during the October 2014 hearing.

¶ 8    Masud's motion to reconsider, filed on November 13, 2014, argued that the trial court had improperly refused to consider expert witness testimony regarding the nonmarital nature of the founder's shares and the overall value of the marital estate, which Masud contended was essentially zero.   Masud sought, as alternatives: (1) a reconsideration and denial of any interim attorney fees; (2) a vacation of the October 2014 fee award and a new hearing on interim attorney fees, at which the value of the marital estate as a whole could be litigated; (3) the entry

of a finding of immediate appealability pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010); or (4) a finding of "friendly contempt" against Masud, imposing a nominal sanction that would permit him to appeal the fee award.

¶ 9 Muneeza's response noted that Masud's motion for reconsideration was untimely. She also asserted that, despite the barring of Masud's proffered experts, there was ample evidence in the record supporting the trial court's determination that the marital estate was sufficiently large to support the advance of interim attorney fees. Finally, she argued that Illinois law clearly established that interim-attorney-fee awards are not final or appealable orders and that Masud's efforts to circumvent this law should be denied as improper, both on policy grounds and because she had not sought to have him held in contempt.

¶ 10 Over the next year and a half, Masud filed four appeals from various interlocutory orders entered by the trial court, all of which were dismissed by this court because we lacked jurisdiction to hear them. See *In re Marriage of Arjmand*, 2015 IL App (2d) 150115-U; *In re Marriage of Arjmand*, 2015 IL App (2d) 150274-U; *In re Marriage of Arjmand*, 2015 IL App (2d) 150483-U; *In re Marriage of Arjmand*, 2016 IL App (2d) 160332-U.

¶ 11 On April 22, 2016, the trial court heard oral argument on the parties' motions to reconsider its October 2014 award of interim attorney fees. The trial court granted Muneeza's motion and modified its earlier award, entering a judgment against Masud in favor of Muneeza's attorneys in the amount of $230,000 ($210,000 in attorney fees and $20,000 for expert witness expenses). The written order stated that the judgment constituted "temporary relief." The order also incorporated the provisions of the October 2014 order regarding the method by which the fees were to be paid.

¶ 12 The trial court denied Masud's motion to reconsider or, in the alternative, for a finding of "friendly" contempt or of immediate appealability pursuant to Rule 304(a). The trial court

noted that, as no final judgment disposing of all the issues in the dissolution was in effect, Masud could not use Rule 304(a) to prosecute piecemeal appeals from interim orders. See *In re Marriage of Leopando*, 96 Ill. 2d 114, 119 (1983); *In re Marriage of King*, 336 Ill. App. 3d 83, 88 (2002) ("The request for attorney fees in a dissolution action that has not yet been resolved is not an independent action and must be considered to be part of the overall divorce proceeding."). Further, no finding of "friendly" contempt was appropriate, as Masud's purpose in seeking an immediate appeal of the interim fee award was not "a good-faith effort to secure an interpretation of an issue without direct precedent" (*In re Marriage of Beyer*, 324 Ill. App. 3d 305, 321 (2001)); rather, Masud simply disagreed with the result reached by the trial court. See *In re Marriage of Levinson*, 2013 IL App (1st) 121696, ¶ 56 ("The Act does not allow for parties to generally test the validity of interim fee awards under the guise of a 'friendly contempt' merely because the party does not agree with the award.").

¶ 13    On April 25, 2016, Muneeza filed an affidavit for nonwage garnishment of various accounts held by Masud, in the amount of $230,000. The circuit court clerk issued nonwage garnishment summonses directed toward Morgan Stanley and Computershare, the entities that held some of Masud's assets, including the founder's shares. Muneeza's attorneys sent notice of the garnishment summonses to Masud pursuant to section 12-705 of the Code (735 ILCS 5/12-705 (West 2014)), advising him of his right to contest the garnishment.

¶ 14    Masud filed a motion to quash the garnishment proceedings, arguing that, as the interim fee award was not a final judgment, garnishment was not available to enforce it. Masud also argued that, if the $230,000 judgment was sufficiently final to provide a legal basis for garnishment, it must also be sufficiently final to be appealable, or else Masud would be unfairly prejudiced by being effectively unable to challenge the interim fee award.

¶ 15    On August 4, 2016, the trial court held a hearing on the garnishment.    At the close of the hearing, the trial court ruled that Muneeza was legally permitted to pursue garnishment in order to obtain payment of the $230,000 judgment against Masud for interim attorney fees.    The trial court entered a turnover order requiring Morgan Stanley to liquidate certain shares (not the founder's shares) in one of Masud's accounts to pay the judgment.    Morgan Stanley executed the turnover on the following day.    On August 9, 2016, Masud filed this appeal.

¶ 16                                      II. ANALYSIS

¶ 17    On appeal, Masud raises many of the same arguments raised in his motion to reconsider the trial court's October 2014 order awarding interim attorney fees, as well as his arguments directed toward the April 2016 judgment modifying that earlier order and the August 2016 turnover order.    Before we may address these arguments, however, we must first determine whether we have jurisdiction to hear Masud's appeal.    See *In re Marriage of Link*, 362 Ill. App. 3d 191, 192 (2005) (a reviewing court has a duty to consider whether it has jurisdiction and to dismiss an appeal if it lacks jurisdiction).    We note that Muneeza previously moved to dismiss the appeal for lack of jurisdiction.    We denied that motion.    However, "we may reconsider our ruling on a motion to dismiss an appeal at any time before the disposition of the appeal." *Stoneridge Development Co. v. Essex Insurance Co.*, 382 Ill. App. 3d 731, 739 (2008).    We therefore examine the issue of our jurisdiction further.

¶ 18    As explained by our supreme court, although the Illinois Constitution provides for appellate review of a final judgment disposing of all of the claims raised in a case, the jurisdiction of a reviewing court to hear any other appeal is governed by the Illinois Supreme Court Rules:

> "Article VI, section 6, of the 1970 Illinois Constitution provides that final
>
> judgments may be appealed as a matter of right from the circuit court to the appellate

court. (Ill. Const. 1970, art. VI, § 6.) There is no corresponding constitutional right to appeal from interlocutory orders of the circuit court. Rather, article VI, section 6, vests this court with the authority to provide for such appeals, by rule, as it sees fit. (Ill. Const. 1970, art. VI, § 6.) Except as specifically provided by those rules, the appellate court is without jurisdiction to review judgments, orders or decrees which are not final."

*Almgren v. Rush-Presbyterian-St. Luke's Medical Center*, 162 Ill. 2d 205, 210 (1994).

In this case, many of the issues related to the dissolution—including the determination of whether various assets are marital or nonmarital, the extent of the marital estate, and the appropriate distribution of that estate—are still pending before the trial court. Accordingly, we have jurisdiction to hear this interlocutory appeal only if such an appeal is specifically permitted by a supreme court rule. *Id.*

¶ 19    Masud acknowledges that, under Illinois law, orders awarding interim attorney fees are not immediately appealable in and of themselves. See *In re Marriage of Tetzlaff*, 304 Ill. App. 3d 1030, 1039 (1999). Section 501(c-1)(3) of the Act permits a court to "assess an interim award against an opposing party in an amount necessary to enable the petitioning party to participate adequately in the litigation, upon findings that the party from whom attorney's fees and costs are sought has the financial ability to pay reasonable amounts and that the party seeking attorney's fees and costs lacks sufficient access to assets or income to pay reasonable amounts." 750 ILCS 5/501(c-1)(3) (West 2014). "In enacting section 501(c-1), the legislature's goal was to level the playing field by equalizing the parties' litigation resources where it is shown that one party can pay and the other party cannot." *In re Marriage of Beyer*, 324 Ill. App. 3d 305, 315 (2001).

¶ 20    An interim award of attorney fees is strictly temporary in nature, subject to adjustment (including, if necessary, the disgorgement of overpayments to an attorney) at the close of the dissolution proceeding:

> "Any assessment of an interim award (including one pursuant to an agreed order) shall be without prejudice to any final allocation and without prejudice as to any claim or right of either party or any counsel of record at the time of the award.   Any such claim or right may be presented by the appropriate party or counsel at a hearing on contribution under subsection (j) of Section 503 or a hearing on counsel's fees under subsection (c) of Section 508.   Unless otherwise ordered by the court at the final hearing between the parties or in a hearing under subsection (j) of Section 503 or subsection (c) of Section 508, interim awards, as well as the aggregate of all other payments by each party to counsel and related payments to third parties, shall be deemed to have been advances from the parties' marital estate.   Any portion of any interim award constituting an overpayment shall be remitted back to the appropriate party or parties, or, alternatively, to successor counsel, as the court determines and directs, after notice in a form designated by the Supreme Court."   750 ILCS 5/501(c-1)(2) (West Supp. 2015).

Further, section 501(d) of the Act explicitly states that a temporary order entered pursuant to section 501: "(1) does not prejudice the rights of the parties *** which are to be adjudicated at subsequent hearings in the proceeding; (2) may be revoked or modified before final judgment, on a showing by affidavit and upon hearing; and (3) terminates when the final judgment is entered." 750 ILCS 501(d) (West 2014).

¶ 21    The plain language of section 501 thus clearly indicates that the legislature intended the remedy for any error in the granting of interim attorney fees to be addressed through a comprehensive reconsideration and reallocation at a final hearing on attorney fees held near the

entry of the final judgment of dissolution. In accordance with this intent, the interlocutory appeal of interim-attorney-fee awards is not permitted by any supreme court rule. See *Tetzlaff*, 304 Ill. App. 3d at 1039; see also *In re Marriage of Johnson*, 351 Ill. App. 3d 88, 96 (2004) (order requiring attorney to disgorge previously paid fees was not immediately appealable where final hearing on attorney fees had not yet been held).

¶ 22    Masud contends, however, that Rule 304(b)(4) permits him to appeal the August 2016 turnover order that arose from the garnishment proceedings. Ill. S. Ct. R. 304(b)(4) (eff. Feb. 26, 2010). He further argues that, just as the review of a contempt order requires the reviewing court to consider the validity of the order(s) disobeyed by the appellant (see *Kaull v. Kaull*, 2014 IL App (2d) 130175, ¶ 22), any review of the August 2016 turnover order also requires us to consider the validity of the underlying orders awarding interim attorney fees. There are several flaws in these arguments.

¶ 23                    A. Rule 304(b)(4) Pertains to Citation Proceedings

¶ 24    First, Rule 304(b)(4) does not authorize interlocutory appeals from orders entered in nonwage garnishment proceedings, which are governed by sections 12-701 through 12-719 of the Code. See 735 ILCS 5/12-701 *et seq*. (West 2014). Rather, Rule 304(b)(4) permits an interlocutory appeal only from "[a] final judgment or order entered in a proceeding under section 2-1402 of the Code [(735 ILCS 5/2-1402 (West 2014))]." Ill. S. Ct. R. 304(b)(4) (eff. Feb. 26, 2010). Section 2-1402 relates to a different type of proceeding: a citation to discover assets. Nothing in Rule 304(b)(4) permits an appeal from an interlocutory garnishment order.

¶ 25    This conclusion arises from the unambiguous language of the rule itself. Supreme court rules "are to be construed in the same manner as statutes." *In re Denzel W.*, 237 Ill. 2d 285, 294 (2010); see also *In re Marriage of Nettleton*, 348 Ill. App. 3d 961, 967 (2004) ("In interpreting a supreme court rule, we apply the same principles that are used to construe a statute, and our goal

is to determine the intent of the drafters of the rule."). The language of a rule or statute is the most reliable indicator of its intended purpose. *Yang v. City of Chicago*, 195 Ill. 2d 96, 103 (2001). That language must be afforded its plain and ordinary meaning, and where the language is clear and unambiguous we must apply the law without resort to further interpretory aids. *In re Michael D.*, 2015 IL 119178, ¶ 9. Here, the plain language of Rule 304(b)(4) is unambiguous: it permits interlocutory appeals only from final judgments entered in citation proceedings under section 2-1402 of the Code.

¶ 26 Masud argues that, although the language of Rule 304(b)(4) refers only to citation proceedings, it should be interpreted as extending to garnishment proceedings as well. In support of this argument, he cites three cases: *Busey Bank v. Salyards*, 304 Ill. App. 3d 214 (1999), *In re Marriage of McElwee*, 230 Ill. App. 3d 714 (1992), and *Peter Fischer Import Motors, Inc. v. Buckley*, 121 Ill. App. 3d 906 (1984). However, none of these cases warrants a departure from the plain language of the rule.

¶ 27 In *McElwee*, the reviewing court stated—without offering any legal support—that "[g]arnishment proceedings under section 12-701 of the Code *** are regarded as 'supplementary proceedings' within the meaning of section 2-1402 of the Code." *McElwee*, 230 Ill. App. 3d at 719. However, insofar as we have been able to discover, neither the text and commentary of sections 12-701 and 2-1402, nor the case law interpreting those provisions, supports this statement. To the contrary, garnishment and citation proceedings had different origins at common law and have always been codified as distinct procedures. See Robert G. Markoff, *Survey of Illinois Law: Enforcement of Judgments*, 33 S. Ill. U. L.J. 631, 633-35 (2009) (tracing the different historical roots and scope of garnishment and citation proceedings); see also *National Home, Inc. v. American National Bank & Trust Co. of Chicago*, 16 Ill. App. 2d 111, 115-16 (1958) (garnishment actions have different statutory requirements than

"supplementary" citation proceedings arising under the precursor to section 2-1402 (Ill. Rev. Stat. 1957, ch. 110, ¶ 73), and one type of action could not be converted into the other without complying with the statutory requirements); Michael G. Cortina, *Citations Versus Non-Wage Garnishments: Which Is Right for Your Collection Case?*, 93 Ill. B.J. 362, 363 (2005) ("Unlike a third-party citation to discover assets, *** garnishments are not considered 'supplementary' proceedings.' "). The *McElwee* court went on to state that appeals in garnishment proceedings "are governed by Supreme Court Rule 304(b)(4)." *McElwee*, 230 Ill. App. 3d at 719. However, this statement was supported only by a single citation, to *Buckley*. (Similarly, *Busey Bank* cited only *McElwee* and *Buckley* to support its statement that "orders that terminate all or part of [a] garnishment proceeding are appealable pursuant to Supreme Court Rule 304(b)(4)." *Busey Bank*, 304 Ill. App. 3d at 218.) Thus, we must turn to *Buckley* to see if it advances any principled or logical reason to depart from the plain language of Rule 304(b)(4).

¶ 28 In *Buckley*, the plaintiff filed a breach-of-contract suit against the defendant. *Buckley*, 121 Ill. App. 3d at 907. Before the conclusion of the suit (indeed, even before the defendant had been served), the plaintiff moved to attach a bank account belonging to the defendant. *Id.* at 908. The trial court entered an attachment order. Upon receiving the attachment order, the bank moved to dismiss the order on the ground that the account was exempt from "garnishment" proceedings. The trial court granted the bank's motion and dismissed the attachment order. The plaintiff appealed the dismissal. Subsequently, the defendant was served, and the underlying contract suit was still pending when the reviewing court took up the appeal. *Id.*

¶ 29 In examining whether it had jurisdiction to consider the merits of the appeal, the reviewing court noted that, although the third party in attachment proceedings can be referred to as a "garnishee," attachment is a prejudgment procedure that differs from garnishment under section 12-701 of the Code, which occurs after a judgment has been entered. *Id.* at 910. The

reviewing court then commented, without citation to any legal authority, that Rule 304(b)(4) "permits an appeal from an order in a supplementary proceeding such as garnishment." *Id*. However, the court explained, no supreme court rule permitted an interlocutory appeal from an attachment proceeding. Thus, it had no jurisdiction over the appeal. *Id*.

¶ 30 When read in context, the *Buckley* court's statement that Rule 304(b)(4) permits the interlocutory appeal of an order entered in a garnishment proceeding under section 12-701 must be seen as *dicta*. As the court itself acknowledged, the proceeding at issue in *Buckley* was not a garnishment proceeding, and thus the issue of jurisdiction to review a garnishment order was not before the court. Moreover, as we have noted, the court offered no support for its casual statement that Rule 304(b)(4) provides for jurisdiction over appeals from garnishment orders. Accordingly, we find the *Buckley* statement unpersuasive, offering no justification to ignore the plain language of Rule 304(b)(4) that limits the scope of that rule to citation proceedings pursuant to section 2-1402. As the August 2016 turnover order did not arise from a citation proceeding, we have no jurisdiction under Rule 304(b)(4) to review it.

¶ 31 B. Limits on Interlocutory Appeals in Dissolutions

¶ 32 Even if the language of Rule 304(b)(4) were not so clear, we would be hesitant to hold that a party to a dissolution proceeding could obtain appellate review of an interim order by appealing that order's enforcement. As our supreme court has explained, the intertwined nature of the issues encompassed in a dissolution proceeding requires them to be addressed comprehensively in a single final order:

"A petition for dissolution advances a single claim; that is, a request for an order dissolving the parties' marriage. The numerous other issues involved, such as custody, property disposition, and support are merely questions which are *ancillary* to the cause of action. [Citation.] They do not represent separate, unrelated claims; rather, they are

- 13 -

separate issues relating to the *same* claim. In fact, it is difficult to conceive of a situation in which the issues are more interrelated than those involved in a dissolution proceeding. Should the trial court decline to grant the petition for dissolution, no final relief may be obtained relevant to the other issues involved. *** Practically speaking, then, until all of the ancillary issues are resolved, the petition for dissolution is not fully adjudicated." (Emphasis in original.) *Leopando*, 96 Ill. 2d at 119.[1]

¶ 33 Masud argues that, if a judgment requiring the payment of interim attorney fees is sufficiently final to be enforceable through garnishment, it must also be immediately appealable. To support his argument that enforceability and appealability necessarily go hand in hand, he cites the supreme court's statement in *In re Application of Du Page County Collector*, 152 Ill. 2d 545, 549 (1992), that "[i]t is precisely the prevailing party's ability to enforce a judgment which gives rise to the nonprevailing party's ability to immediately challenge the judgment on appeal." *Du Page County Collector* is distinguishable from this case, however, in that it was not a dissolution case. As the supreme court taught in *Leopando*, dissolution cases are different from other cases; even when the trial court has entered a valid finding under Rule 304(a) (the question addressed in *Du Page County Collector*), most of the issues raised in a dissolution case are not immediately appealable. *Leopando*, 96 Ill. 2d at 119. But see Ill. S. Ct. R. 304(b)(6) (eff. Feb.

---

[1] This view of a dissolution case as presenting a single unified claim explains why this appeal is considered an interlocutory "prejudgment" appeal: although the marriage between Masud and Muneeza has been dissolved, the petition for dissolution has not been fully adjudicated, because not all of the issues related to that dissolution have been resolved. Thus, statutory provisions relating to the conduct of *postjudgment* hearings regarding attorney fees do not have any current application.

26, 2010) (subsequent to the entry of the decision in *Leopando*, Rule 304(b) was amended to add subsection (6), which permits the immediate appeal of any judgment relating to child custody).

¶ 34    Moreover, the structure of the Act itself provides for a variety of interim or temporary orders that may give rise to enforceable judgments despite the fact that the final judgment of dissolution has not yet been entered.    See, *e.g.*, 750 ILCS 5/504(b-7) (West 2014) ("Any new or existing maintenance order *** entered by the court *** shall be deemed to be a series of judgments against the person obligated to pay support thereunder," and "[e]ach such judgment shall have the full force, effect and attributes of any other judgment of this State, including the ability to be enforced"); 750 ILCS 5/505(d) (West 2014) ("Any new or existing support order entered by the court under this Section shall be deemed to be a series of judgments against the person obligated to pay support thereunder, each such judgment to be in the amount of each payment or installment of support and each such judgment to be deemed entered as of the date the corresponding payment or installment becomes due," and [e]ach such judgment shall have the full force, effect and attributes of any other judgment of this State, including the ability to be enforced"); 750 ILCS 5/508(a) (West 2014) (when a trial court enters an award of interim attorney fees, "[j]udgment may be entered and enforcement had accordingly").    Illinois courts have consistently held that, despite their enforceability, such interim judgments arising from the court-ordered payment of temporary support or attorney fees in dissolution cases are not immediately appealable.    See, *e.g.*, *Tetzlaff*, 304 Ill. App. 3d at 1039; *In re Marriage of Ryan*, 188 Ill. App. 3d 679, 681 (1989) (finding no appellate jurisdiction to review trial court's entry of a judgment of arrearage in child support and maintenance payments, commenting that "[t]he fact that an order is enforceable *** does not necessarily make it appealable").    Accordingly, when the judgment at issue awards interim relief under the Act, enforceability and appealability are not necessarily synonymous.

¶ 35    As the supreme court has stated, one purpose of the Act was to " 'encourage[ ] the court to decide all matters incident to the dissolution in a single judgment, to the fullest extent of its authority, in order to achieve finality, promote judicial economy, and avoid multiple litigations and complications which can result from the entry of partial judgments.' " *In re Marriage of Cohn*, 93 Ill. 2d 190, 197 (1982) (quoting Ill. Ann. Stat., ch. 40, ¶ 401(3), Historical & Practice Notes, at 105 (Smith-Hurd 1980) (codified at 750 ILCS 5/401(3))).   In this case, Muneeza cannot retain the benefit of Masud's payment of interim attorney fees unless she files a motion for contribution at the close of the dissolution proceedings, and the trial court's ultimate determination of that issue will depend in part on matters that are not yet resolved, such as the appropriate distribution of the marital estate.   750 ILCS 5/503(j)(2) (West 2014).   This policy against piecemeal appeals from interim orders entered in dissolution cases provides additional support for our determination that Masud may not use an appeal from a garnishment order as a vehicle to challenge the award of interim attorney fees.

¶ 36    Finally, the policy behind section 501(c-1) of the Act also supports our determination that Illinois law does not countenance appeals from garnishment orders arising from interim-attorney-fee awards.   "[I]f orders addressing interim attorney fee awards were subject to interlocutory appeal, the party in a dissolution proceeding with less financial ability to pay fees incident to the litigation would be at a severe disadvantage in retaining counsel," which would undermine "one of the key purposes of the 'leveling the playing field' amendments to the Act[:] *** to provide 'for timely awards of interim fees to achieve substantial parity in parties' access for funds for litigation costs.' " *Tetzlaff*, 304 Ill. App. 3d at 1039-40 (quoting 750 ILCS 5/102(5) (West 1996)).   Indeed, the procedural history of this dissolution proceeding—which includes no fewer than five fruitless (but costly) interlocutory appeals by Masud—is an example

of the very evil that the legislature sought to avoid. We urge Masud, Muneeza, and the trial court to focus their energies on bringing the remaining issues to trial without further delay.

¶ 37                                III. CONCLUSION

¶ 38     For all of these reasons, we lack jurisdiction over this appeal and must dismiss it.

¶ 39     Appeal dismissed.