In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 22-1424

IN RE: JOHN FLISS,

*Debtor-Appellee,*

*v.*

GENERATION CAPITAL I, LLC,

*Appellant.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:19-cv-08187 — **Franklin U. Valderrama**, *Judge.*

———————————

ARGUED DECEMBER 7, 2022 — DECIDED NOVEMBER 27, 2023

———————————

Before FLAUM, KIRSCH, and JACKSON-AKIWUMI, *Circuit
Judges.*

JACKSON-AKIWUMI, *Circuit Judge.* John Fliss and Larry
Wojciak were once business partners. But their relationship
soured when their jointly owned companies defaulted on a
bank loan. After the bank obtained a consent judgment in
state court, Wojciak used one of his companies, Generation
Capital I, LLC, to take over as the judgment creditor and

attempt to enforce the judgment against Fliss. When Fliss filed for bankruptcy in federal court (because of his overall insolvency), Generation Capital I asserted a claim in the bankruptcy proceedings against Fliss in the amount of the consent judgment, plus interest. Fliss objected, and the bankruptcy court disallowed Generation Capital I's claim in its entirety.

This appeal asks us to decide whether the bankruptcy court violated the *Rooker-Feldman* doctrine by disallowing Generation Capital I's claim, or alternatively, whether the prior state court litigation precluded Fliss from objecting to Generation Capital I's claim in bankruptcy court. We hold that the bankruptcy court had subject matter jurisdiction to consider the claim objection—the *Rooker-Feldman* doctrine posed no obstacle—and that Fliss was not otherwise barred from objecting to the claim. We therefore affirm.

**I**

More than ten years ago, John Fliss, Larry Wojciak, and Mark Barr went into business together. They took out a $200,000 secured loan from a bank as working capital for their two jointly owned companies. Each man personally guaranteed the loan, and a trust established in Sherry Wojciak's name (Larry's spouse), was the fourth guarantor. When the businesses failed and the borrowers defaulted on the loan, the bank sought to recoup its losses in state court. In May 2011, the state court issued a consent judgment in the amount of $208,639.95 against Fliss, Barr, Wojciak, their companies, and Sherry Wojciak's trust, and held the four guarantors jointly and severally liable.

What happened next was either a stroke of ingenuity or scheming, depending on who you ask: Wojciak negotiated a

deal with the bank that allowed him to step into the bank's shoes as a judgment creditor.[1] He then sought to enforce the entire amount of the debt against his former business partners, Fliss and Barr. The feat was accomplished in multiple steps, using three entities owned and operated by the Wojciaks: Generation Capital, Generation Capital I, and Generation Capital II.

Larry Wojciak's initial moves were as follows: on February 24, 2012, he entered into a sale and assignment agreement with the bank, through Generation Capital I, to purchase the promissory note and judgment debt for $240,000. Two days later, he also entered into a settlement agreement with the bank under which he (and Sherry's trust) agreed to pay $240,000 to settle the judgment debt and have the loan documents assigned to Generation Capital pursuant to the sale and assignment agreement. The next day, on February 27, Larry Wojciak had Generation Capital II wire $240,000 to the bank. *See Generation Cap. I, LLC v. Fliss (In re Fliss)*, 586 B.R. 21, 23–24 (N.D. Ill. 2018). This transaction completed the first part of Wojciak's plan.

Wojciak then kicked off the second part of his plan: stepping into the bank's shoes in the state court proceedings. On May 8, 2012, the state court entered an order substituting Generation Capital I for the bank as the plaintiff. Wojciak next moved to enforce the judgment, through Generation Capital I, against Fliss and Barr by commencing a supplemental proceeding and seeking turnover of property in satisfaction of the

---

[1] Although the transactions involved Sherry's accounts and trust, Sherry testified that her husband controlled all business and financial decisions and that she signed documents because he asked her to.

judgment. Fliss and Barr filed a motion for determination in the main proceeding, arguing that the debt was extinguished when the Wojciaks paid $240,000 to the bank in exchange for settling the judgment. The state court disagreed, found that the settlement agreement was not executed, and entered a determination order in May 2015 stating that the debt was still owed.

In August 2015, Fliss filed a voluntary Chapter 13 petition in bankruptcy court. Chapter 13 allows an individual debtor who cannot fulfill his financial obligations to submit to the bankruptcy court "a plan for paying his creditors as much as possible over a period of years, upon completion of which he is given a discharge of his remaining dischargeable debts." *In re Crawford*, 324 F.3d 539, 541 (7th Cir. 2003). The Bankruptcy Code requires creditors to file a proof of claim. FED. R. BANKR. P. 3002(a). Thus, in December 2015, Wojciak had Generation Capital I file a secured claim in bankruptcy court seeking to enforce the entire state court judgment, now $359,967.69 including post-judgment interest, against Fliss. Fliss objected to the claim.

The bankruptcy court disallowed Generation Capital I's claim in its entirety and approved the Chapter 13 plan proposed by Fliss. The bankruptcy court found that Wojciak used Generation Capital I as his alter ego and, as a result, became both the creditor and debtor of the state court judgment. This merger of interests extinguished the debt. As relevant on appeal, the bankruptcy court further held that the doctrines of *Rooker-Feldman*, res judicata, and collateral estoppel did not bar it from deciding whether the claim should be allowed or disallowed.

Generation Capital I appealed to the district court, which affirmed the bankruptcy court's ruling. We now consider these issues.

## II

We review the bankruptcy court's factual findings for clear error and the legal conclusions of both the bankruptcy court and the district court de novo. *In re Kempff*, 847 F.3d 444, 448 (7th Cir. 2017). Our review of the district court's application of the *Rooker-Feldman* doctrine is de novo. *Andrade v. City of Hammond*, 9 F.4th 947, 949 (7th Cir. 2021).

Generation Capital I advances two arguments on appeal. First, it asserts that, under the *Rooker-Feldman* doctrine, the bankruptcy court lacked subject matter jurisdiction to consider the claim objection filed by Fliss. Alternatively, Generation Capital I argues that the doctrines of res judicata and collateral estoppel bar the claim objection. We consider the *Rooker-Feldman* issue first because it is jurisdictional.

The *Rooker-Feldman* doctrine is a creature of two Supreme Court decisions, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). It "is a principle of jurisdiction that precludes the lower federal courts from applying appellate review to state court decisions." *Epps v. Creditnet, Inc.*, 320 F.3d 756, 759 (7th Cir. 2003). "An action in federal court that alleges an injury 'inextricably intertwined' with a state court decision, such that success in the federal court would require overturning the state court decision, is barred by the *Rooker–Feldman* doctrine." *Id.*

The *Rooker-Feldman* doctrine is inapplicable here for at least two reasons. First, Fliss did not file a federal suit seeking, as a cause of action or prayer for relief, to set aside a state court judgment. *See id.* at 759 (federal court jurisdiction barred by *Rooker-Feldman* where the plaintiffs' "prayer for relief ask[ed] the district court to set aside the [state court] judgment . . . and 'refund' . . . the damages assessed by the state court"). Instead, Fliss petitioned for bankruptcy court protection under Chapter 13 of the Bankruptcy Code because his income and assets were not enough to meet his liabilities. The issue of the state court judgment was only raised after Generation Capital I (not Fliss) filed a claim asserting a $359,967.69 secured debt and Fliss objected to that claim pursuant to federal bankruptcy law and procedures.

Second, the state court never decided (nor could it) the key issue facing the bankruptcy court in Fliss's and Wojciak's dispute: whether Generation Capital I's bankruptcy claim should be allowed or disallowed under federal bankruptcy law. "The *Rooker–Feldman* doctrine asks: is the federal plaintiff seeking to set aside a state judgment, or does he present some independent claim,[2] albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party? . . . [I]f the latter, then there is jurisdiction." *GASH Assocs. v. Village of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993). The state court judgment and the bankruptcy court's disallowance of Generation Capital I's claim simply "are not two sides of the same coin." *Remer v. Burlington Area Sch. Dist.*, 205

---

[2] We treat as the "independent claim" Fliss's objection to Generation Capital I's claim. We recognize that the objection is not a claim in a traditional sense. Perhaps this incongruence is another indication for why *Rooker-Feldman* is inapplicable here.

F.3d 990, 997 (7th Cir. 2000); *see also Brokaw v. Weaver*, 305 F.3d 660, 668 (7th Cir. 2002) (*Rooker-Feldman* not applicable where state court proceeded under state law allowing only consideration of state law question); *Zurich Am. Ins. Co. v. Super. Ct of Cal.*, 326 F.3d 816, 822 (7th Cir. 2003) (*Rooker-Feldman* did not bar jurisdiction because federal claim arose under federal law and existed irrespective of state court's handling of state law issues).

Generation Capital I argues that we can glean Fliss's intent to attack the state court judgment because Fliss wrote in his briefs before our court, the district court, and the bankruptcy court that the state court "got it wrong**.**" But those statements alone do not make *Rooker-Feldman* applicable. *Zurich Am. Ins. Co.*, 326 F.3d at 823–24 ("A mere assertion that a [lower federal] court, in considering a claim that is independent of the state court judgment, might negate a legal conclusion that the state court reached is insufficient to trigger application of *Rooker–Feldman*."); *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 555–56 ("[T]he fact that the plaintiff's pursuit of his federal claims could ultimately show that the state court judgment was erroneous [does] not automatically render *Rooker–Feldman* applicable.").

We next turn to Generation Capital I's argument that the claim objection filed by Fliss is barred by the doctrines of res judicata and collateral estoppel. While different in scope, both doctrines function to preclude a party from relitigating issues decided in a prior adjudication. The party asserting res judicata and collateral estoppel as an affirmative defense must show that a final judgment on the merits was entered in the prior proceedings. *Rein v. David A. Noyes & Co.*, 665 N.E.2d 1199, 1204 (Ill. 1996) (res judicata); *Am. Fam. Mut. Ins. Co. v.*

*Savickas*, 739 N.E.2d 445, 451 (Ill. 2000) (collateral estoppel).[3] Generation Capital I argues that the state court entered two orders that satisfy the final judgment requirement: the consent judgment entered in 2011 and the determination order entered in 2015. Neither order has the effect Generation Capital I would like to assign it.

Take the consent judgment first. We agree with the district court that it was a final judgment, but it ultimately has limited preclusive effect. The district court based its conclusion, at least in part, on the bankruptcy court's finding that a judgment obtained by confession has a limited preclusive effect because it is not "actually litigated." Indeed, Illinois courts are generally "reluctant to give preclusive effect to consent judgments." *Ekkert v. City of Lake Forest*, 588 N.E.2d 482, 486 (Ill. App. Ct. 1992). We must, however, add a critical observation to the analysis: consent judgments are treated differently under res judicata and collateral estoppel doctrines, and neither the district court nor the bankruptcy court acknowledged this distinction.

A consent judgment is not entitled to collateral estoppel effect because the doctrine of collateral estoppel relies on "actual" litigation of issues in the prior proceeding, *Savickas*, 739 N.E.2d at 451, while a consent judgment is "an administrative act of the court recording an agreement of the parties, rather than a judicial determination of the rights of the parties and the issues involved," *Arnett v. Env't Sci. & Eng'g, Inc.*, 657

---

[3] We apply Illinois law to this question of preclusion because "the preclusive effect of a state court judgment in a federal case is a matter of state rather than of federal law." *CIGNA Healthcare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849, 856 (7th Cir. 2002).

N.E.2d 668, 673 (Ill. App. Ct. 1995). *See also Meyer v. Rigdon*, 36 F.3d 1375, 1379 (7th Cir. 1994) ("[A] default judgment is normally not given preclusive effect under the collateral estoppel doctrine because no issue has been 'actually litigated.'"); *Klingman v. Levinson*, 831 F.2d 1292, 1296 (7th Cir. 1987) (consent judgments not given preclusive effect unless parties clearly indicate that intent).

The question of whether res judicata applies to the consent judgment is more complicated. There is an unresolved split in Illinois appellate courts as to whether dismissal pursuant to a settlement agreement amounts to a final judgment on the merits for res judicata purposes. *Jackson v. Callan Publ'g, Inc.*, 826 N.E.2d 413, 427–28 (Ill. App. Ct. 2005); *see also Urban v. J.P. Morgan Chase & Co.*, 2022 IL App (1st) 211389-U, ¶ 24. Under a "modern view," Illinois courts "generally recognize[] that a valid consent judgment is entitled to a res judicata effect, so as to preclude relitigation of the same claim or cause of action as was covered by such judgment." *Jackson*, 826 N.E.2d at 428. The district court affirmed the bankruptcy court's conclusion that the consent judgment is a final judgment, and Fliss does not contest that finding on appeal. We therefore proceed with the assumption that the consent judgment has preclusive effect pursuant to the res judicata doctrine and focus our analysis on the *extent* of the preclusion here.

The consent judgment is brief—it simply states the amount owed to the bank by each of the four guarantors and the companies jointly owned by Fliss, Barr, and Wojciak. The district court affirmed the bankruptcy court's finding that the consent judgment "has limited preclusive effect—only as to the existence of the debt and its amount." We agree because a consent judgment "is conclusive *with respect to the matters*

*settled* by the order, judgment, or decree." *Elliott v. LRSL Enters., Inc.*, 589 N.E.2d 1074, 1077 (Ill. App. Ct. 1992) (emphasis added); *see also Arizona v. California*, 530 U.S. 392, 414 (2000) (noting that under federal law, "consent agreements ordinarily are intended to preclude any further litigation on the *claim* presented but are not intended to preclude further litigation on any of the *issues* presented" (emphasis added)). The matters settled by the consent judgment were only the existence of the debt and its amount: "Judgment by confession in the amount of $204,797.70 plus $407 costs and $3,435.25 attorney's fees is entered against John W. Fliss." We therefore see no reason to disagree with the district court on the limited preclusive effect the consent judgment has in the present litigation.

The state court's determination order is the last obstacle Generation Capital I raises to thwart Fliss's claim objection—unsuccessfully so, though for different reasons. To explain, we begin with an overview of a relevant procedural mechanism used by judgment creditors in Illinois—initiation of supplemental proceedings to recover on the judgment, also known as Section 2–1402 proceedings. 735 Ill. Comp. Stat. 5/2–1402(a); *see Stonecrafters, Inc. v. Wholesale Life Ins. Brokerage, Inc.*, 915 N.E.2d 51, 56 (Ill. App. Ct. 2009). At the conclusion of these supplemental proceedings, the presiding court may order a turnover of the judgment debtor's assets to the judgment creditor. *GE Betz, Inc. v. Zee Co.*, 718 F.3d 615, 627 (7th Cir. 2013). An order entered in supplemental proceedings is final when the judgment creditor "is in a position to collect against the judgment debtor or a third party," or has been "ultimately foreclosed from doing so." *Inland Com. Prop. Mgmt., Inc. v. HOB I Holding Corp.*, 31 N.E.3d 795, 800 (Ill. App. Ct. 2015).

Turning back to the facts of this case, consider how Generation Capital I obtained the determination order. After taking over as the judgment creditor, it brought a supplemental proceeding in state court and filed a motion that sought, among other things, an order directing Fliss to turn over his real property in satisfaction of the consent judgment. The judge presiding over the supplemental proceeding declined to rule on the turnover motion until "the issue concerning a determination as to the amount which may be due and owing" to Generation Capital I was decided. This prompted Fliss (and Barr) to file a motion in the primary proceeding arguing that the debt had been extinguished when the Wojciaks settled the judgment with the bank. The judge presiding over the main proceeding disagreed and in May 2015 entered a determination order stating that the debt was still owed and due to Generation Capital I.

Does this make the determination order a final order? We think not. Illinois Supreme Court Rule 304 governs appeals from final judgments that do not dispose of the entire proceeding. Rule 304(a) requires "an express written finding" by the court "that there is no just reason for delaying either enforcement or appeal or both." ILL. SUP. CT. R. 304(a); *see Xcel Supply LLC v. Horowitz*, 100 N.E.3d 557, 563 (Ill. App. Ct. 2018). The determination order did not include this special finding, meaning that it is not a final appealable order under Illinois rules. Generation Capital I insists that the court was not required to include a special finding because the determination order was "[a] final judgment or order entered in a proceeding under section 2-1402," which is excepted under Rule 304(a). ILL. SUP. CT. R. 304(b)(4); *Xcel Supply LLC*, 100 N.E.3d at 563. We are not persuaded by Generation Capital I's argument for three reasons.

First, to state the obvious: the exception does not apply here because the determination order was entered in the main proceeding, not the supplemental proceeding. *In re Marriage of Arjmand*, 74 N.E.3d 1140, 1146 (Ill. App. Ct. 2017) ("[T]he plain language of Rule 304(b)(4) is unambiguous: it permits interlocutory appeals only from final judgments entered in citation proceedings under section 2-1402 of the Code.").

Second, but no less evident: there was no final judgment in the supplemental proceeding when the determination order was entered. To the contrary, the supplemental proceeding had pending turnover motions filed by Generation Capital I that could be decided only *after* the determination order was entered.

Finally, because Generation Capital I's turnover motions had not been decided, it was not "in a position to collect against the judgment debtor or a third party." *Inland Com. Prop. Mgmt., Inc.*, 31 N.E.3d at 800; *see also Chi. Police Sergeants' Ass'n, Policemen's Benevolent & Protective Ass'n, Unit 156A v. Pallohusky*, 86 N.E.3d 1123, 1128 (Ill. App. Ct. 2017) (a turnover order was final under Rule 304(b)(4) where it "require[d] the payment of specific assets to a judgment creditor" and put the creditor in a position to collect). True, the determination order stated that "[t]here remains an outstanding judgment against" Fliss and others "in the amount of $204.797.70." But, unlike a turnover order, it did not "requir[e] the payment or liquidation of assets to satisfy a judgment." *Pallohusky*, 86 N.E.3d at 1127–28 (collecting cases).

Thus, neither the consent judgment nor the determination order was a final judgment that, under the doctrines of res judicata and collateral estoppel, precluded Fliss from objecting

to Generation Capital I's claim in bankruptcy court and raising the arguments he did in the process.

In closing, we note a key gap in the record and Generation Capital I's preclusion arguments: the state court entered a turnover order in the supplemental proceedings in July 2015. This order put Generation Capital I in a position to collect the judgment against Fliss's real property. Had the order been included in the record and relied on for arguments, it would indeed qualify as a final judgment under Illinois Supreme Court rules. But Generation Capital I never presented this order—before our court, the district court, or the bankruptcy court. Arguments not raised in the district court are waived on appeal, *Brown v. Auto. Components Holdings, LLC*, 622 F.3d 685, 691 (7th Cir. 2010), and "raising an issue in general terms is not sufficient to preserve specific arguments that were not previously presented," *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012). Moreover, it was Generation Capital I's burden to demonstrate that the affirmative defenses of res judicata and collateral estoppel apply, *Oshana v. FCL Builders, Inc.*, 994 N.E.2d 77, 82 (Ill. App. Ct. 2013) (res judicata); *Pederson v. Village of Hoffman Ests.*, 8 N.E.3d 1083, 1095 (Ill. App. Ct. 2014) (collateral estoppel), just as it was Generation Capital I's responsibility "to allege facts and indicate their relevance under the correct legal standard," *Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 721 (7th Cir. 2008) (internal quotations omitted).

Generation Capital I had numerous opportunities to present the state turnover order and argue its finality in this case. But at every stage of litigation, it steadfastly relied on other orders to convince us, the district court, and the bankruptcy court that it had obtained a final judgment in state court. Even

when asked at oral argument about the turnover order, counsel for Generation Capital I once again referred us to the determination order. Under these circumstances, we have no doubt that Generation Capital I waived any arguments concerning the finality of the turnover order for purposes of res judicata and collateral estoppel. We therefore do not consider the turnover order in deciding this appeal. *See, e.g.*, *Lauth v. Covance, Inc.*, 863 F.3d 708, 718 (7th Cir. 2017) ("[W]e can invoke waiver *sua sponte* . . . .").

Having found that Generation Capital I failed to demonstrate the existence of a final judgment as required by both res judicata and collateral estoppel, we do not address the parties' arguments about the other elements of these doctrines. Similarly, we do not reach Generation Capital I's argument about the bankruptcy court's disallowance of its claim as a discovery sanction.

## III

*Rooker-Feldman* is an important principle that preserves appellate review of state court decisions exclusively for the Supreme Court. It does not bar federal bankruptcy courts from deciding issues of federal bankruptcy law. To hold otherwise would expand the doctrine far beyond its reach. Accordingly, *Rooker- Feldman* was not an obstacle when Fliss objected to Generation Capital I's claim, and neither were the doctrines of res judicata and collateral estoppel.

AFFIRMED.