2018 IL App (1st) 162986
No. 1-16-2986
Opinion filed February 8, 2018

FOURTH DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| XCEL SUPPLY LLC, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 2009 L 004771 |
| | ) | |
| VICTOR HOROWITZ, | ) | The Honorable |
| | ) | Ann Collins-Dole, |
| Defendant | ) | Judge, presiding. |
| | ) | |
| (Hydra Properties, LLC; Ahuva | ) | |
| Horowitz; and Sundance Methadone | ) | |
| Treatment Center, LLC, | ) | |
| | ) | |
| Third-Party Citation | ) | |
| Respondents, | ) | |
| | ) | |
| Hydra Properties, LLC, | ) | |
| | ) | |
| Third-Party Citation | ) | |
| Respondent-Appellant). | ) | |

JUSTICE GORDON delivered the judgment of the court, with opinion.
Presiding Justice Burke and Justice Ellis concurred in the judgment and opinion.

**OPINION**

¶ 1        This is an appeal by a third-party citation respondent from a postjudgment proceeding.

¶ 2        In the underlying case, plaintiff Xcel Supply, LLC, obtained a judgment against defendant Victor Horowitz in the amount of $468,021.87. Plaintiff then served a citation on Hydra Properties, LLC (Hydra), the only appellant in this appeal, informing Hydra that it was prohibited from transferring any property to defendant. On September 16, 2015, the trial court entered "a conditional judgment" in favor of plaintiff. On the very next day, Hydra, which is fully owned by defendant's wife, wrote the first of the checks in question to defendant.[1] Between September 17, 2015, and December 17, 2015, Hydra wrote six checks to defendant, totaling $5220, which he admittedly cashed. On October 13, 2016, the trial court ordered Hydra to turnover $5220 to plaintiff within 30 days. On November 14, 2016, Hydra filed a notice appealing this order, as well as an earlier order.

¶ 3        On this appeal, Hydra makes several claims. First, Hydra claims that the trial court failed to hold an evidentiary hearing prior to issuing a turnover order, although (1) the trial court stated repeatedly in written orders that it was going to hold a hearing and did, in fact, hold a hearing, (2) Hydra failed to include in the appellate record a transcript or bystander's report for the hearing date or any other court date, and (3) Hydra stated a week before the scheduled hearing that, in its opinion, it was not limited "in any way" in what it could present at the hearing. Second, Hydra claims that the trial court had no evidentiary basis to find that the six checks were defendant's property, although defendant averred in an affidavit that the checks were made out to "A. Horowitz," that he cashed them and that he spent the money on

---

[1]In its brief to this court, Hydra conceded that it wrote the checks to defendant. See *infra* ¶ 22.

his family's expenses. Both an order[2] of the trial court and defendant's deposition transcript indicate that he uses the first name "Avigdor," as well as the first name "Victor," and Hydra concedes on this appeal that it issued the checks to defendant. Third, Hydra claims that the trial court abused its discretion by failing to consider his late response to plaintiff's turnover motion. However, we have fully considered it, and we fail to see how this response, which included defendant's affidavit that he received and cashed the checks in question, could have undermined the conclusion that the checks were his property.

¶ 4        For the reasons more fully explained below, we do not find Hydra's claims persuasive and affirm the trial court's turnover order directing Hydra to pay plaintiff $5220. Plaintiff has not asked this court for interest, so we did not consider that issue.

¶ 5                                        BACKGROUND

¶ 6        On April 22, 2009,[3] plaintiff Xcel Supply, LLC, filed a one-count complaint for breach of contract against defendant Victor Horowitz. *Xcel Supply, LLC v. Horowitz*, 2017 IL App (1st) 152277-U, ¶ 5. After six years of discovery and motion practice, the suit proceeded to a bench trial in 2015. *Xcel Supply*, 2017 IL App (1st) 152277-U, ¶¶ 15, 22. After trial, the trial court found in favor of plaintiff and awarded it $468,021.87 in damages on July 17, 2015, and $3312.75 in costs and $153,746.25 in attorney fees on October 21, 2015. *Xcel Supply*, 2017 IL App (1st) 152277-U, ¶¶ 30, 32. On June 30, 2017, this court affirmed. *Xcel Supply*, 2017 IL App (1st) 152277-U, ¶ 112.

---

[2]The August 22, 2016, order, which was one of the two orders that Hydra is appealing, states that plaintiff "requests turnover of $5,220.00, an amount paid to Judgment Debtor Avigdor Horowitz after service of the Citation to Hydra Properties."

[3]The record before us does not start until the end of November 2015. As a result, the facts before then are taken from our prior order in the underlying case or from documents filed as exhibits to subsequently filed motions.

¶ 7    On August 27, 2015, after the bench trial and the damages award, plaintiff served a citation to discover assets on Hydra. The citation stated, in relevant part:

"You are PROHIBITED from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from the enforcement of a judgment, a deduction order or garnishment, property belonging to the judgment debtor or to which s/he may be entitled or which may thereafter be acquired by or become due to him or her, and from paying over or otherwise disposing of any monies not so exempt, which are due to the judgment debtor. This prohibition shall remain in effect until further order of court or termination of the proceeding. You are not required to withhold the payment of any monies beyond double the amount of the total sum due the judgment creditor."

¶ 8    After Hydra failed to appear and answer the citation,[4] the trial court entered an order on September 16, 2015, stating "that a conditional judgment in the amount of $468,021.87, is entered in favor of Xcel Supply, LLC and against Hydra Properties, LLC as Third Party Citation Respondent in this proceeding." The order further directed the clerk of the court to "issue a summons to confirm the conditional judgment against Hydra Properties, LLC, commanding Hydra Properties, LLC to show cause why the conditional judgment should not be made final." On October 14, 2015, an attorney filed an appearance on behalf of Hydra.

¶ 9    On November 24, 2015, Hydra filed a response, in which Ahuva Horowitz certified that, on the date of the service of the citation, Hydra did not have in its possession "any personal property or monies belonging to" defendant. Ahuva Horowitz is defendant's wife

---

[4]In its appellate brief, Hydra states that "[t]he facts relevant to the instant appeal are set forth" in plaintiff's May 12, 2016, turnover motion. The fact that Hydra failed to appear is taken from that motion.

and the owner of Hydra. At her deposition, Ahuva testified that she was an owner of Hydra, although she did not know how or when it was first organized, who organized it, or whether it did anything or owned anything. She further testified that she had never done anything for Hydra. In his affidavit, defendant averred that Ahuva Horowitz was the sole owner.

¶ 10          On May 12, 2016, plaintiff filed a motion for rule to show cause and for turnover. Attached to its motion was an exhibit containing copies of six cancelled checks. Plaintiff stated in its motion that it had received these copies in an e-mail from Hydra's attorney on January 19, 2016, and plaintiff claimed that they established that defendant was "an authorized signer on Hydra's checking account" and "had signed numerous checks payable to himself."

¶ 11          The copies of the six checks show that they were all payable to "A. Horowitz"; were dated between September 17, 2015, and December 17, 2015; and totaled $5220. As noted above, an order of the court and defendant's deposition transcript indicate that he uses the first name "Avigdor," as well as the first name "Victor." Specifically, the checks were: (1) No. 2014, dated September 17, 2015, for $250; (2) No. 2019, dated October 19, 2015, for $300; (3) No. 2020, dated October 19, 2015, for $1820; (4) No. 2160, dated October 29, 2015, for $570; (5) No. 2162, dated November 13, 2015, for $1780; and (6) No. 2165, dated December 17, 2015, for $500. The copies indicate that the checks were all cashed on the same day that they were written and the signature, which is a series of illegible loops, appears to be the same signature on both the front and back of the checks. In its motion, plaintiff asked the court to order Hydra "to immediately turn over an amount which is not less than $5,220.000 [*sic*]" to plaintiff.

¶ 12        In an order dated June 2, 2016, the trial court ordered defendant to file its response by June 30, 2016. Instead, defendant filed its response on July 1, 2016, one day late. The trial court subsequently denied defendant's motion to file its late response.

¶ 13        Although the trial court denied defendant's motion to file its late response, the response is in the appellate record, and one of the issues that Hydra raises on appeal is whether the trial court abused its discretion by not considering it. In its response, Hydra emphasized that "the checks at issue were all made payable to 'A. Horowitz,' " without specifying whether "A."—or the payee—was "Avigdor," defendant, or "Ahuva," his wife.[5] Hydra did concede that the checks were all "negotiated" by defendant, and that it had produced the copies attached to plaintiff's motion. Hydra argued that these checks were "loans or gifts" to defendant, rather than his assets or income.

¶ 14        In its response, Hydra stated that Hydra's manager is Ahuva Horowitz, defendant's wife, and that she owns 100% of the membership interests of Hydra a limited liability corporation.

¶ 15        Similarly, in defendant's affidavit, attached to Hydra's response, defendant averred that Ahuva Horowitz is his wife, that she owns 100% of the membership interests of Hydra, and that he "negotiated" the six checks in question, which "were used to pay expenses related to the health and welfare of our children." Defendant's affidavit used the passive voice, stating that the monies "were used," and thus did not expressly state that he was the one who used the monies to pay the expenses. However, that fact is a reasonable inference, since he admits to being the one who cashed them to use for "our children." Defendant averred that,

_____

[5]Hydra later conceded on appeal that the checks were written to defendant. *Supra* ¶ 22.

No. 1-16-2986

"[a]t no time between September 17 and December 17, 2015[,] did Hydra owe" him any money.

¶ 16 In his affidavit, defendant argued that, "if the Court rules that such payments were subject to Citation proceedings, then [he] assert[ed] the $4,000 exemption available to [him] pursuant to 735 [ILCS] 5/12-1001(b)." Section 5/12-1001(b) of the Code of Civil Procedure (Code) provides in relevant part that:

"The following personal property, owned by the debtor, is exempt from judgment, attachment, or distress for rent:

\*\*\*

(b) The debtor's equity interest, not to exceed $4,000 in value, in any other property[.]" 735 ILCS 5/12-1001(b) (West 2016).

¶ 17 In addition, defendant averred that "Ashman Law Offices" had filed a prior lien against his assets on June 23, 2015. "Ashman & Stein" was the firm that represented plaintiff in the court below. As noted above, after trial in the underlying matter, the trial court had awarded plaintiff $153,746.25 in attorney fees. *Xcel Supply*, 2017 IL App (1st) 152277-U, ¶ 32.[6]

¶ 18 On August 2, 2016, the trial court entered an order stating that it had held a "hearing on Motion for Turnover," heard arguments, and would shortly issue a ruling. The appellate record does not contain a transcript or bystander's report for either August 2, 2016, or August 22, 2016, the date when a ruling issued.

¶ 19 On August 22, 2016, the trial court entered an order, stating:

---

[6]Hydra does not make a claim in its appellate brief that the trial court erred because $4000 was exempt (*infra* ¶ 16) or because the Ashman Law Offices had a prior claim. Thus, these issues are not before us.

7

"This matter is before the Court on [plaintiff's] Motion for Rule to Show Cause and for Turnover against Third Party Citation Respondent Hydra Properties, LLC. Hydra allegedly repeatedly violated the Citation served upon it on August 28, 2015. [Plaintiff] requests turnover of $5,220.00, an amount paid to Judgment Debtor Avigdor[7] Horowitz after service of the Citation to Hydra Properties. Hydra failed to respond to [plaintiff's] Motion within the time set by this Court for doing so. It is hereby ordered that:

A. [Plaintiff's] Motion for a Rule to Show Cause is granted.

B. The matter is set for hearing on Thursday, September 29 *** regarding Hydra Properties, LLC's alleged violation of the Citation."

Thus, "[t]he matter" of Hydra's alleged citation violation was "set for hearing." On September 8, 2016, the trial court entered an order stating that, by agreement of the parties, "the hearing date is re-set to 10/13/16."

¶ 20     A week before the scheduled hearing, Hydra filed a "Motion to Reconsider or Clarify Order," in which it argued, among other things, that "[t]he Court's order does not indicate the nature of the hearing and what evidence will be required either on behalf of the movant or on behalf of [Hydra]. Nothing in the order suggests that [Hydra] will be limited in any way in further defending the petition for Rule to Show Cause and For Turnover."

¶ 21     On October 13, 2016, the trial court issued an order stating in full:

"This matter having come on for hearing pursuant to this court's 8/22/16 Order & Third Party Citation Respondent Hydra Properties' Motion to Reconsider or Clarify Order, the parties having appeared through counsel,

---

[7]As already noted above, defendant uses a first name of both "Victor" and "Avigdor."

IT IS HEREBY ORDERED

1. Hydra's Motion is granted in part and denied in part.

2. The Order is clarified to require Hydra to turnover to plaintiff $5,220 within 30 days.

3. Hydra's Motion for Leave to File its 7/1/16 opposition *instanter* is denied.

4. The Court makes no finding of contempt.

5. Plaintiff shall file petition for attorneys' fees by 11/14/16.

6. Status is set for 11/15/16 at 10 a.m."

Although the order observed that the "matter" had "come on for hearing," the appellate record does not contain a transcript or bystander's report for this date or any other date in this case. The order directed Hydra to turnover $5220 to plaintiff within 30 days. Thirty days from the date of the order was Saturday, November 12, 2016.

¶ 22    On Monday, November 14, 2016, Hydra filed a notice of appeal appealing the trial court's orders dated August 22, 2016, and October 13, 2016. Hydra's brief to this court "conceded that Hydra issued checks totaling $5,220 to Horowitz." Earlier in its brief, Hydra stated that when it used "Horowitz," it meant "Defendant Victor Horowitz." Hydra thereby conceded that the payee of the checks, "A. Horowitz," was defendant. After Hydra filed its opening appellate brief on July 31, 2017, plaintiff filed a response on December 5, 2017, in which it stated that, in light of "the de minimus [sic] relief being sought by [Hydra], no opposition briefs will be filed in this matter." This appeal followed.

¶ 23                                    ANALYSIS

¶ 24    On this appeal, Hydra raises three claims: (1) that the trial court erred by failing to hold an evidentiary hearing, (2) that that the trial court's ruling has no evidentiary basis, and

(3) that the trial court abused its discretion by not allowing Hydra to file its response late. For the following reasons, we do not find these claims persuasive and affirm.

¶ 25                                   I. Jurisdiction

¶ 26        On this appeal, Hydra also makes arguments in its brief as to why this court has jurisdiction. An appellate court always has an independent duty to consider its own jurisdiction and to dismiss an appeal if jurisdiction is lacking. *Williams Montgomery & John Ltd. v. Broaddus*, 2017 IL App (1st) 161063, ¶ 32 (citing *Archer Daniels Midland Co. v. Barth*, 103 Ill. 2d 536, 539 (1984)); *In re Marriage of Arjmand*, 2017 IL App (2d) 160631, ¶ 17; *Eclipse Manufacturing Co. v. U.S. Compliance Co.*, 381 Ill. App. 3d 127, 131 (2007) (a reviewing court has a duty to consider *sua sponte* its jurisdiction and dismiss an appeal if jurisdiction is lacking). Thus, we review Hydra's arguments and find that we do have jurisdiction, for the reasons discussed below.

¶ 27        Hydra argues that this court has jurisdiction pursuant to Illinois Supreme Court Rule 304 (eff. Mar. 8, 2016), which permits appeals from certain final judgments that do not dispose of an entire proceeding. Paragraph (a) specifies the types of judgments where an appeal may be taken if the trial court makes a special finding first. Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016). Paragraph (b) specifies the types of judgments for which no special finding is required for an appeal. Ill. S. Ct. R. 304(b) (eff. Mar. 8, 2016). Hydra argues that paragraph (b) applies, and specifically its subparagraph (4):

>        "(b) Judgments and Orders Appealable Without Special Finding. The following judgments and orders are appealable without the finding required for appeals under paragraph (a) of this rule:

>                                   * * *

(4) A final judgment or order entered in a proceeding under section 2-1402 of the Code of Civil Procedure." Ill. S. Ct. R. 304(b)(4) (eff. Mar. 8, 2016).

¶ 28    Section 2-1402 of the Code provides in relevant part:

"A judgment creditor, or his or her successor in interest when that interest is made to appear of record, is entitled to prosecute supplementary proceedings for the purposes of examining the judgment debtor or any other person to discover assets or income of the debtor not exempt from the enforcement of the judgment, a deduction order or garnishment, and of compelling the application of non-exempt assets or income discovered toward the payment of the amount due under the judgment. A supplementary proceeding shall be commenced by the service of a citation issued by the clerk." 735 ILCS 5/2-1402(a) (West 2016).

¶ 29    In the case at bar, plaintiff commenced a "supplementary proceeding" by serving a "citation" on Hydra, and the trial court issued an order to enforce "payment" of part of "the amount due under the judgment." 735 ILCS 5/2-1402(a) (West 2016). Thus, section 2-1402 of the Code (735 ILCS 5/2-1402 (West 2016)) applies, as well as Illinois Supreme Court Rule 304(b)(4) (eff. Mar. 8, 2016) permitting an appeal. *Williams Montgomery & John Ltd.*, 2017 IL App (1st) 161063, ¶ 34 ("Citation orders entered in supplementary proceedings pursuant to section 2-1402 become final and appealable upon their entry.").

¶ 30    Illinois Supreme Court Rule 304(b) provides that: "The time in which a notice of appeal may be filed from a judgment or order appealable under this Rule 304(b) shall be as provided in Rule 303." Ill. S. Ct. R. 304(b) (eff. Mar. 8, 2016). Rule 303 provides, in relevant part, that "[t]he notice of appeal must be filed with the clerk of the circuit court within 30

11

days after the entry of the final judgment appealed from." Ill. S. Ct. R. 303(a)(1) (eff. Jan. 1, 2015). Thus, Hydra had 30 days from the October 13, 2016, order to file an appeal. Ill. S. Ct. R. 303(a)(1) (eff. Jan. 1, 2015).

¶ 31        As noted above, 30 days from October 13, 2016, was Saturday, November 12, 2016, and Hydra filed its notice of appeal on Monday, November 14, 2016. Section 1.11 of the Statute on Statutes provides, in relevant part, that

> "[t]he time within which any act provided by law is to be done shall be computed by excluding the first day and including the last, unless the last day is Saturday or Sunday or is a holiday *** and then it shall also be excluded. If the day succeeding such Saturday, Sunday or holiday *** is also a holiday or a Saturday or Sunday then such succeeding day shall also be excluded." 5 ILCS 70/1.11 (West 2016). Thus, Saturday and Sunday, November 12 and 13, 2016, were excluded, and Hydra's notice of appeal was timely filed on Monday, November 14, 2016.

¶ 32        In addition, we have jurisdiction to review the August 22, 2016, order, since it was one of the steps in the procedural progression leading to the entry of the order on appeal. *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 23 (a reviewing court has jurisdiction if the order was "a step in the procedural progression leading to the final judgment").

¶ 33        Thus, pursuant to the statutes and rules discussed above, we have jurisdiction to hear this appeal.

¶ 34                                II. Evidentiary Hearing

¶ 35        Hydra's first claim is that the trial court erred by not holding an evidentiary hearing, as required by section 2-1402 (735 ILCS 5/2-1402 (West 2016)) and Illinois Supreme Court Rule 277 (eff. Jan. 4, 2013).

¶ 36          Since Hydra argues about what section 2-1402 and Rule 277 require, this appeal requires us to interpret a statute and a rule and, thus, to apply the well-known principles of statutory interpretation. When interpreting a supreme court rule, we are governed by the same rules that govern statutory interpretation. *A.M. Realty Western L.L.C. v. MSMC Realty, L.L.C.*, 2016 IL App (1st) 151087, ¶ 73 (citing *VC&M, Ltd. v. Andrews*, 2013 IL 114445, ¶ 30 ("Court rules are interpreted under the same principles that guide our construction of statutes.")).

¶ 37          The primary objective of statutory interpretation is to give effect to the legislature's intent, which is best indicated by the plain language of the statute itself. *State of Illinois ex rel. Pusateri v. Peoples Gas Light & Coke Co.*, 2014 IL 116844, ¶ 8 (citing *Citizens Opposing Pollution v. ExxonMobil Coal U.S.A.*, 2012 IL 111286, ¶ 23). Where the language is plain and unambiguous, we apply the statute without resort to further aids of statutory interpretation. *In re Lance H.*, 2014 IL 114899, ¶ 11.

¶ 38          Questions of statutory interpretation are reviewed *de novo*. *People v. Schlosser*, 2017 IL App (1st) 150355, ¶ 28; *People v. Chatman*, 2016 IL App (1st) 152395, ¶ 23. "*De novo* review means that we will perform the same analysis a trial court would perform." *Trzop v. Hudson*, 2015 IL App (1st) 150419, ¶ 63.

¶ 39          Section 2-1402(a) permits "a judgment creditor," such as the plaintiff in this case, "to prosecute supplementary proceedings" in order "to discover assets or income of the debtor" and to apply those "assets or income discovered toward the payment of the amount due under the judgment." 735 ILCS 5/2-1402(a) (West 2016). See also *Workforce Solutions v. Urban Services of America, Inc.*, 2012 IL App (1st) 111410, ¶ 39; *Stonecrafters, Inc. v. Wholesale Life Insurance Brokerage, Inc.*, 393 Ill. App. 3d 951, 958 (2009). The proceedings may be

13

commenced against "the judgment debtor or any other person" who may have information concerning income or assets belonging to the judgment debtor. 735 ILCS 5/2-1402(a), (b-10) (West 2016); *Stonecrafters*, 393 Ill. App. 3d at 958 (the proceeding may be initiated "against a judgment debtor or a third party to discover the assets of a judgment debtor").

¶ 40    Section 2-1402 provides a court with broad powers, including the power to "[c]ompel any person cited *** to deliver up any assets so discovered, to be applied in satisfaction of the judgment, in whole or in part, when those assets are held under such circumstances that in an action by the judgment debtor he or she could recover them." 735 ILCS 5/2-1402(c)(3) (West 2016). When a third party is named in a citation, he, she or it is referred to as "a third-party citation respondent." *Workforce Solutions*, 2012 IL App (1st) 111410, ¶ 39. In the instant appeal, for example, the third-party citation respondent is Hydra. When a third-party citation respondent, such as Hydra, is ordered "to deliver up" assets (735 ILCS 5/2-1402(c)(3) (West 2016)), the order is called a turnover order. See *Workforce Solutions*, 2012 IL App (1st) 111410, ¶ 39.

¶ 41    The proceedings are "commenced by the service of a citation." 735 ILCS 5/2-1402(a) (West 2016). "The citation may prohibit the party to whom it is directed from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from the enforcement of a judgment therefrom *** belonging to the judgment debtor or to which he or she may be entitled or which may thereafter be acquired by or become due to him or her *** until the further order of the court or the termination of the proceedings, whichever occurs first." 735 ILCS 5/2-1402(f)(1) (West 2016). The citation, filed in this case by plaintiff, so advised Hydra. In addition, in the case at bar, the trial court entered "a conditional judgment in the amount of $468,021.87, *** in favor of Xcel Supply, LLC and

against Hydra Properties, LLC," on September 16, 2015, which was the day before Hydra wrote the first of the six checks in question.

¶ 42     The statute provides that "[t]he court may punish any party who violates the restraining provision of a citation" and "may enter judgment against him or her in the amount of the unpaid portion of the judgment and costs allowable under this Section, or in the amount of the value of the property transferred, whichever is lesser." 735 ILCS 5/2-1402(f)(1) (West 2016). In the case at bar, in its August 22, 2016, order, the trial court granted plaintiff's motion which the court described as claiming that Hydra "repeatedly violated the Citation served upon it on August 28, 2015." On October 13, 2016, the trial court entered judgment against Hydra "in the amount of the value of the property transferred" (735 ILCS 5/2-1402(f)(1) (West 2016)), which was $5220 or the total of the six checks that Hydra paid to defendant.

¶ 43     Illinois Supreme Court Rule 277 is titled "Supplementary Proceeding," and it specifies how "[a] supplementary proceeding authorized by section 2-1402" is conducted. Ill. S. Ct. R. 277(a) (eff. Jan. 4, 2013); *Workforce Solutions*, 2012 IL App (1st) 111410, ¶ 41 (the "procedure for conducting supplementary proceedings is prescribed by Illinois Supreme Court Rule 277"). A subsection titled "Hearing" states in relevant part:

>      "The examination of the judgment debtor, third party or other witnesses shall be before the court, *** unless the judgment creditor elects, by so indicating in the citation or subpoena or by requesting the court to so order, to conduct all or a part of the hearing by deposition as provided by the rules of this court for discovery depositions. The court at any time may *** control and direct the proceeding to the

end that the rights and interests of all parties and persons involved may be protected and harassment avoided." Ill. S. Ct. R. 277(e) (eff. Jan. 4, 2013).

¶ 44    Rule 277 also provides that "[a]ny interested party may subpoena witnesses and adduce evidence as upon the trial of any civil action." Ill. S. Ct. R. 277(e) (eff. Jan. 4, 2013). In the instant appeal, Hydra argues that this court has interpreted this language to require an evidentiary hearing, and cites in support *Workforce Solutions*, 2012 IL App (1st) 111410, ¶ 41.

¶ 45    However, in the supreme court case of *Dowling v. Chicago Options Associates, Inc.*, 226 Ill. 2d 277 (2007), a four-justice majority of the supreme court found that a trial court could decide a contested supplemental proceeding without an evidentiary hearing (*Dowling*, 226 Ill. 2d at 285), while three justices believed that an evidentiary hearing was needed. (*Dowling*, 226 Ill. 2d at 302, 305 (Freeman, J. concurring in part and dissenting in part, joined by Kilbride and Burke, JJ.)). *Wilson v. State Employees' Retirement System of Illinois*, 336 Ill. App. 3d 199, 205 (2002) (where an appellate court opinion conflicts with a supreme court opinion, we must decline to follow the intermediary court). The *Workforce* opinion attempts to distinguish *Dowling* by stating that, despite the requirement of a hearing, parties are still "free" to choose instead "to proceed by way of summary judgment motion or otherwise stipulate to the facts to allow the court to decide questions as a matter of law." *Workforce*, 2012 IL App (1st) 111410, ¶ 45. The problem with *Workforce*'s attempt to distinguish *Dowling* is that none of those events took place in *Dowling*. There is no mention of a summary judgment motion or a stipulation in *Dowling*. The *Dowling* opinion states only that the citation respondent "produced records" and "[o]ral argument was heard." *Dowling*, 226 Ill. 2d at 283. See also *Urban Partnership Bank v. Winchester-Wolcott, LLC*, 2014 IL

App (1st) 133556, ¶ 8 (this court affirmed a turnover order that the trial court entered solely "in reliance on the parties' arguments and the record" and "without holding an evidentiary hearing"). *Cf. In re Estate of Zagaria*, 2013 IL App (1st) 122879, ¶¶ 24, 26 (an evidentiary hearing was not required for a turnover order in a supplemental proceeding under the Probate Act (755 ILCS 5/16-1 (West 2010))).

¶ 46    Even if *Workforce* applies in general, it is not clear that it applies on the particular facts of our case.

¶ 47    In *Workforce*, this court observed that appellate courts have "interpreted this language" in Rule 277, which permits any party to subpoena witnesses and present evidence, "as imposing a requirement on the [trial] court to conduct a trial or evidentiary hearing to determine ownership of a third party's assets *where both the judgment creditor* and *the third-party citation respondent* claim entitlement to those assets." (Emphasis added.) *Workforce Solutions*, 2012 IL App (1st) 111410, ¶ 41 (listing and discussing cases); *Harmon v. Ladar Corp.*, 200 Ill. App. 3d 79, 83 (1990) ("[o]rdinarily" a hearing or trial is required).

¶ 48    As noted, it is unclear whether this requirement applies in this case. First, in this case, the third party—in essence, the wife—is not claiming she is entitled to have back those assets spent by her husband on their children. This is not a tug-of-war between the judgment creditor on the one hand and the third-party citation respondent, on the other, as envisioned by the *Workforce* opinion. This is a contest between the judgment creditor on one hand and a completely united husband and wife, debtor and respondent, on the other. In other words, does the evidentiary hearing requirement apply when the citation respondent is not really a "third party"? Thus, to the extent that a third-party citation respondent has a court-imposed right to an evidentiary hearing, it is unclear whether this requirement applies on the unusual

facts of this case, where the third-party citation respondent and the judgment debtor present one united, marital front.

¶ 49    Hydra cites one case involving a husband and wife, in which the appellate court held that the wife should have been allowed "to put in her proofs" at the evidentiary hearing as her attorney had requested. *Roy Strom Excavating & Grading Co. v. National Bank of Albany Park*, 4 Ill. App. 3d 561, 565-66 (1972). However in that case, the wife of the judgment debtor, who was also the third-party citation respondent, filed an answer stating that she and the judgment debtor had not resided together as husband and wife for several years and that the transfer of property to her was made in contemplation of divorce and was the result of the property settlement between her and husband. *Roy Strom*, 4 Ill. App. 3d at 566. Those facts are so diametrically opposed to the facts in our case that Hydra's citation to *Roy Strom* weakens its argument rather than strengthens it.

¶ 50    Second, the instant case concerns the violation of a citation and the punishment for violating that citation. By contrast, in *Workforce*, there was no violation. Thus, it is unclear if an evidentiary hearing or trial is also required for a citation violation, where the parties have submitted briefs, affidavits, deposition transcripts, and other documentary exhibits.

¶ 51    However, whether or not an evidentiary hearing was required, Hydra has failed in its burden as an appellant to present a sufficient record from which we could conclude that it lacked the opportunity—as in *Roy Strom*—"to put in [his] proofs" at a hearing. *Roy Strom*, 4 Ill. App. 3d at 565.

¶ 52    "It is the appellant's burden to provide a sufficiently complete record to support his or her claims." *People v. Stephens*, 2017 IL App (1st) 151631, ¶ 10 n.3. When an appellant fails to provide a transcript or bystander's report for the proceedings at issue, we will generally

presume that the resulting order was properly entered. See generally *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984).

¶ 53    In *Roy Strom*, the appellate court observed that, initially, its record did not contain any transcripts and, thus, there was "some question" about what had occurred. *Roy Strom*, 4 Ill. App. 3d at 564. However, the appellant sought leave to file transcripts, which the appellate court granted over the appellee's objection, so that by the time the appellate court ruled, it had "true and correct transcripts of all proceedings" on the relevant dates. *Roy Strom*, 4 Ill. App. 3d at 564. As a result, the appellate court found that "at the present time we have a record before us which is sufficient to determine whether" the citation respondent "received the trial or hearing to which she was entitled." *Roy Strom*, 4 Ill. App. 3d at 564.

¶ 54    In contrast to *Roy Strom*, the appellate record in the case at bar contains no transcripts. Thus, we do not know whether the trial court received evidence or made factual findings at the hearing that it stated repeatedly that it was holding. Hydra's "Motion to Reconsider or Clarify Order," filed a week before the hearing, stated: "The Court's order does not indicate the nature of the hearing and what evidence will be required either on behalf of the movant or on behalf of [Hydra]. Nothing in the order suggests that [Hydra] will be limited in any way in further defending the petition for Rule to Show Cause and For Turnover." We have no reason to doubt Hydra's contemporaneous assertion that it was not "limited in any way" in what it could present at the hearing. Thus, we cannot conclude that Hydra was denied a hearing at which to present its proofs. *Urban Partnership*, 2014 IL App (1st) 133556, ¶ 8 (where "the parties have not included a transcript of the hearing," this court may affirm a turnover order "on any ground that appears in the record").

¶ 55                                    III. Evidentiary Basis

¶ 56         Hydra's next claim is that the trial court's turnover order lacked any evidentiary basis, and that our standard of review for this claim is *de novo*.

¶ 57         Where a trial court relies solely on the parties' oral argument and the record, without conducting an evidentiary hearing or making any findings of fact, a reviewing court will employ a *de novo* standard of review. *Eclipse Manufacturing Co.*, 381 Ill. App. 3d at 134 (citing *Dowling*, 226 Ill. 2d at 285). See also *Urban Partnership* , 2014 IL App (1st) 133556, ¶ 8 ("where a trial court enters a turnover order in reliance on the parties' arguments and the record without holding an evidentiary hearing or making findings of fact, our review is *de novo*"). Thus, for example, in *Eclipse*, where the turnover order "did not require factual findings or credibility determinations," the reviewing court employed a *de novo* standard of review. *Eclipse Manufacturing Co.*, 381 Ill. App. 3d at 134. " '*De novo* review means that we will perform the same analysis a trial court would perform.' " *Horlacher v. Cohen*, 2017 IL App (1st) 162712, ¶ 47 (quoting *Trzop*, 2015 IL App (1st) 150419, ¶ 63).

¶ 58         Hydra's argument that we should employ a *de novo* standard of review because there was no evidentiary hearing—after it failed to supply us with a transcript or report of that hearing—is like the proverbial orphan who throws him or herself on the mercy of the court after murdering his or her parents.

¶ 59         However, whether we employed a *de novo* standard of review or a more deferential standard, our result would be the same.

¶ 60         Hydra claims that there was no "evidentiary support demonstrating that those checks constituted property" of defendant, although defendant conceded in his affidavit that he cashed the checks and spent the money. If defendant is the one pocketing a check, without

any protest from either Hydra or his wife, Hydra's owner, that is strong evidence that it was his property to dispose of, as he saw fit.

¶ 61 Hydra argues that he spent the money from the cashed checks on family expenses and, since his wife had an obligation as a parent to support their children, this money was spent on her behalf. Obviously, as the father, he was just as responsible for their children's expenses. Therefore, the money was spent just as much to satisfy his obligation as hers. This argument does not negate the fact that these checks were his property. If anything, it supports it.

¶ 62                                         IV. Hydra's Response

¶ 63 Hydra's final claim is that the trial court abused its discretion by not considering Hydra's response. On this appeal, we have fully considered Hydra's response and find that it would not have changed the outcome of the issue on appeal, namely, whether the six checks were defendant's property. As we stated above we fail to see how this response, which included defendant's affidavit that he received and cashed the checks in question, would have undermined the finding that they were his property. As a result, we cannot find that the trial court abused its discretion by not permitting Hydra to file it. *Urban Partnership*, 2014 IL App (1st) 133556, ¶ 15 (where the surreply would not haved "change[d] the outcome," this court "reject[ed]" the "contention that the trial court abused its discretion in denying leave to file" it).

¶ 64                                         CONCLUSION

¶ 65 On this appeal, Hydra raised three claims: (1) that the trial court erred by failing to hold an evidentiary hearing, (2) that that the trial court's ruling has no evidentiary basis, and

(3) that the trial court abused its discretion by not allowing Hydra to file its response late. For the foregoing reasons, we do not find these claims persuasive and affirm.

¶ 66         Affirmed.