2021 IL App (1st) 210380-U

SECOND DIVISION
November 23, 2021

No. 1-21-0380

**NOTICE:**  This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| *In re* THE FORMER MARRIAGE OF: | ) ) | Appeal from the Circuit Court of Cook County. |
| CHRISTINA HACKNEY, | ) ) | |
| Petitioner-Appellee, | ) ) | No. 2017 D 530588 |
| v. | ) ) | |
| TRAVIS HACKNEY, | ) ) | The Honorable Patrick Powers, |
| Respondent-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court.
Justices Lavin and Cobbs concurred in the judgment.

**ORDER**

*HELD*:  Trial court's allocation judgment affirmed where appellant fails to allege any substantive issues on appeal amounting to error and there is no legal basis in the record to warrant reversal in light of trial court's decision, which was clearly based on testimony and evidence presented and must otherwise be presumed proper.

¶ 1   Respondent-appellant Travis Hackney (Travis) appeals *pro se* from an allocation judgment entered by the trial court following proceedings concerning the dissolution of his marriage to petitioner-appellee Christina Hackney (Christina), specifically, his parenting time with the parties' minor child. He contends that the trial court committed various errors, namely, that it did not provide all the necessary documentation to ensure he receive a fair appeal, it improperly entered the allocation order *ex parte*, and it charged him fees for documents unrelated to his case and refused to provide him a refund. He asks that we vacate the trial court's judgment and remand the cause for a new hearing, order the trial court to "use the IL Supreme Court approved parenting plan form" available online, and "have both parties use the electronic filing system to submit their proposals ***, use a parental coordinator *** to address any issues, [and] give BOTH parties the SAME access to the court." (Emphasis in original.) For the following reasons, we affirm.

¶ 2                              BACKGROUND

¶ 3   For the record, and in light of Travis' contentions on appeal, we wish to begin by making clear that this appeal is taken from the allocation judgment entered by the trial court on March 24, 2021. The parties are in agreement. Travis' notice of appeal, though filed *pro se*, is unmistakeably clear that this is the order from which he appeals, and he specifies in his *pro se* brief that this Court has jurisdiction to hear his appeal from the trial court's "March 24, 2021" judgment. Accordingly, while numerous orders were entered by the trial court in this cause, the March 24, 2021 allocation judgment is the sole focus of this appeal.

¶ 4   With that clarification in place, we further note that the record here is critically incomplete and respondent's brief, with its lack of citation to any pertinent evidence, does little to provide this Court with the relevant facts of the instant matter. We will address these

concerns more fully below. For now, we note that the following facts are taken from what we can glean from the record on appeal.

¶ 5    The parties were married in 2013 and had one child, A.H., in 2015. In 2017, the parties separated and Christina filed for divorce. Christina retained sole custody of A.H., who resided with her, and Travis was granted supervised parenting time. Travis' parenting time was later increased and became unsupervised via trial court order. Divorce proceedings continued throughout this time.

¶ 6    The record reflects that in December 2018, a hearing was held before the trial court with both parties and their counsel present. While the court's written order following this hearing begins by stating that this matter was "tried over several days" and that the court "listened to the testimony of the parties and all other witnesses," only the transcript of the court's colloquy from that hearing, given minutes before its written order was entered, appears in the record. During this colloquy, the court and the parties discussed matters regarding both marital property and child custody. With respect to custody, it appears that Christina, Travis and A.H.'s guardian *ad litem* had all provided the court with proposals of arrangements they felt were best for A.H., and the court commented that it had read them all but explained that, in reaching its decision, it "went a little different way," as it had been "able to hear the testimony of the parties."[1] Specifically, the court addressed Travis by stating it had "some concerns about [his] conduct" and that his "demeanor in the courtroom made the Court a little uneasy." First, the court cited its concern with Travis' ability to care for a young child such as A.H. for extended periods or overnights since he was taking marijuana, albeit

_____

[1] Again, a transcript of this testimony to which the court refers in its colloquy was not included in the record on appeal.

prescribed, and "falling asleep during [his] own hearing." Second, the court cited its "struggle" with the fact that Travis "had 38 guns in the house" and that there had been an incident where one of them had been discharged therein while a drunken friend was there. And, the court cited its dislike of Travis' "very defensive" responses to and attitude toward petitioner's counsel's "appropriate" cross-examination of him during the hearing. The court went on to state that it found Christina "extremely credible" and that it had "no concerns with her abilities as a parent."

¶ 7     At the conclusion of this hearing, the court issued a parenting order dated December 14, 2018. Although noting that Travis had been diagnosed with post traumatic spectrum disorder and medicates, the court also noted he was under a doctor's care, he had taken parenting classes, the parties were in therapy, and "no serious incidents have occurred" to A.H. during Travis' parenting time. Again, the court stated it found Christina's "testimony to be genuine as she appeared calm and concerned about [A.H.'s] welfare." Ultimately, it allowed Travis to have continued parenting time and overnight visits with A.H, to be increased after four months "[s]hould no incidents occur" during his parenting time.[2]

¶ 8     As the parties continued with divorce proceedings, it appears they engaged in disputes regarding financials and property division. What happened next with regard to A.H.'s custody is a series of events which we have pieced together from documents in the record. Sometime following the December 2018 hearing and order, incidents allegedly occurred at A.H.'s daycare which caused concern, including disruptive behavior and references by A.H. to guns and to Travis using his guns to shoot and kill others. Apparently, based on this and other instances of concern, including A.H.'s references to Travis' marijuana paraphernalia

_____

[2] The court also included other conditions upon respondent, such as continued therapy, etc.

and some incident that took place in February 2019, Christina filed an emergency motion to modify the December 14, 2018 parenting order. In response, on March 7, 2019, the trial court issued an order mandating that Travis turn over all the guns in his possession (which, via a previous order of court, were supposed to be kept in a storage locker outside the home) and that he turn over the key to that locker to the sheriff. The court also ordered that Travis was to store and lock away any marijuana paraphernalia from A.H.'s view and access during his parenting time.

¶ 9        As time passed, several more items were filed in the trial court, including an order of protection filed by Christina against Travis on her behalf as well as A.H.'s, which was granted, as well as modifications to the December 2018 temporary parenting order. The parties continued to dispute property division, financials and attorney and guardian *ad litem* fees. Eventually, Travis' counsel sought to withdraw from the cause; the trial court granted counsel's motion and gave Travis time to obtain new counsel or file a *pro se* appearance. Soon thereafter, in December 2020, Travis filed his *pro se* appearance, using the standard appearance form provided by the court. On the form, Travis clearly indicated he would be proceeding *pro se* and he provided his home address and phone number as contact information. He also checked the box on the form specifically reserved for *pro se* litigants to opt into electronic court notifications and provided his personal email address in the space below it.

¶ 10       In February 2021, Christina filed an "Emergency Motion to Modify Temporary Parenting Order and Continue Trial and or Bifurcate." In response, Travis filed various motions, including one objecting to the emergency motion, another objecting to "supplemental notice to produce," and a third requesting the "appointment of parenting coordinator." The cause

was set for trial, and the court "heard the evidence *** and the arguments." While, again, there is no transcript of this hearing, the record does contain the trial court's ultimate "Bifurcated Judgment for Dissolution of Marriage," which it issued on February 22, 2021. In this, the court bifurcated the divorce proceedings and dissolved the marriage as of that date, reserving "all other matters."

¶ 11    The cause was then "set for entry of ruling after trial on March 24, 2021." On this date, the trial court issued its Allocation Judgment, the order from which Travis now appeals. In the opening paragraph of that order, the trial court acknowledged that Christina, Travis and the guardian *ad litem* appeared in person before it, and that it had "heard the testimony of the parties and the witness[es] called, [and that it] had an opportunity to consider their credibility and demeanor." Again, however, only the trial court's written order appears in the record, and there is no transcript of this hearing.

¶ 12    The court's written order begins with its findings. First, the court noted, again, that it "was able to observe the demeanor of all the witnesses: Travis Hackney, Christina, Hackney, Victor Kaczmarczky, Anna Paszkiet [A.H.'s nanny], and Agnes Olenchno, the Guardian Ad Litem." The court declared that it found Christina, Victor, Anna and Agnes' testimony "to be credible" and that of Travis "not to be credible." It found Travis to be "erratic and reckless" and "without any consideration or regards for [his] behavior." As one example, it cited the fact that Travis "brought a bullet *** into the Court room" at the commencement of the trial. The court then declared that, "with a preponderance of the evidence," Travis continues to "engage in conduct that endangers the child's mental, moral, and physical health, and that the same has significantly impaired the child's emotional development." Here, the court cited that Travis has continued to "complete[ly] disregard" its March 7, 2019

6

order to store all his guns in a locker outside his home and turn the key of the locker over to the sheriff, and that this was "only the start of this Court's concern." The court further noted that Travis, contrary to prior orders of court, has let A.H. have toy guns, play with lighters and knives, encouraged him to disregard the guardian *ad litem*, and refused to inform Christina of injuries A.H. has suffered during his parenting time with Travis. From all this, the court found that Travis "has been unable to develop the skills necessary and make the choices to appropriately care for the minor child."

¶ 13    Accordingly, the Allocation Judgment gave Christina "sole parental responsibility related to the decisions regarding the minor child in health care, education, religion, and extra-curricular activities." It also designated Christina as the residential parent and legal custodian of A.H. Travis was granted regular supervised parenting time, with the option of petitioning for unsupervised time in the future. Additional provisions were included in the order restricting Travis' possession, use and access to guns, ammunition, weapons, etc., as well as to drugs, and that violation of said provisions would "result in immediate suspension of future parenting time."

¶ 14                                    ANALYSIS

¶ 15    As a threshold matter, and as we have repeatedly mentioned, there are several procedural problems with the instant appeal. First, the record on appeal is incomplete. While the written order appealed from is included, the hearing from which it originates is not. Travis admits this failure in his opening brief and repeats it extensively throughout his reply brief. Next, and more critical, Travis' brief violates several portions of Illinois Supreme Court Rule (Rule) 341(h) (eff. May 25, 2018). He includes no fact section, instead replacing it was a few citations to pages in the record and commanding this Court to read and "take judicial

review" of them. He also fails to cite any legal precedent for any of his contentions on appeal. Finally, his entire argument consists of his question asking how he can expect "equal protection" under the law when the record on appeal is incomplete.

¶ 16    An appellant's failure to provide this Court with a complete record on appeal and his noncompliance with the mandatory requirements for briefs dictated in Rule 341(h) give us the prerogative to strike his brief and dismiss his appeal. See, *e.g.*, *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984); *Voris v. Voris*, 2011 IL App (1st) 103814, ¶ 8; see also *Marriage of Petrik*, 2012 IL App (2d) 110495, ¶ 38 (quoting *Kic v. Bianucci*, 2011 IL App (1st) 100622, ¶ 23 (quoting *Thrall Car Manufacturing Co. v. Lindquist*, 145 Ill. App. 3d 712, 719 (1986)) (we are " ' "not a depository in which the appellant may dump the burden of argument and research" ' " for his cause on appeal and reviewing court has every right to strike an appellant's brief and dismiss his cause when rule violations impede review). However, we acknowledge Travis' point regarding the importance of this cause as it involves the custody of a minor, and we do have a cogent brief from Christina. Accordingly, we choose, in our discretion, to reach the merits of the appeal. See *North Community Bank v. 17011 South Park Ave., LLC*, 2015 IL App (1st) 133672, ¶ 14 (reviewing merits of the appeal despite appellant's procedural violations).

¶ 17    With that said, however, we affirm this appeal, as none of Travis' contentions deal with any pertinent or reviewable legal matters and there is absolutely no basis in the record even intimating that reversal of the trial court's allocution judgement is warranted.

¶ 18    Travis' first contention is that the trial court erred in "not providing all of documentation for with [*sic*] the Appellant paid to have transmitted from the circuit clerk to the appellate clerk" so he could "get due process, equal access to the court, and a fair appeal." He insists

that there is "evidence of perjury" throughout the proceedings below and that "the documents that would substantiate this claim were not transmitted." He further insists that he "filed documents with the appellate court to supplement these records" but that the "appelate [*sic*] court denied [his] request to receive the complete record on appeal."

¶ 19    In direct contradiction to Travis' continued insistence, it is not the job of the trial court to provide any documentation on behalf of an appellant seeking appeal. Rather, it is solely appellant's burden to provide a sufficient record to support his claims. See *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 156 (2005); accord *Xcel Supply LLC v. Horowitz*, 2018 IL App (1st) 162986, ¶ 52. Deficiencies in the record are resolved against the appellant (see *Webster v. Hartman*, 309 Il. App. 3d 459, 460 (1999)), and, without a complete record, we must presume that the court acted in accordance with the facts and the law, despite any argument by an appellant to the contrary (see *Foutch*, 99 Ill. 2d at 391-92). Accord *Corral*, 217 Ill. 2d at 156. This is particularly true where, as here, the challenged decision is reviewed on a discretionary basis. See *Foutch*, 99 Ill. 2d at 391-92; *In re Marriage of Debra N. and Michael S.*, 2013 IL App (1st) 122145, ¶ 45 (custody determinations lie within the broad discretion of the trial court and will not be disturbed on review unless they are against the manifest weight of the evidence).

¶ 20    We cannot find error where error cannot be assigned. That is, it was Travis' duty as the appellant, not that of the trial court, to provide this Court on review all the "documentation" he believes necessary for him to obtain, as he puts it, "due process, equal access to the court, and a fair appeal." If there is evidence of perjury, as he insists, he was required to bring that forth. As it is, he has not, and he does not even cite where such perjury occurred in the proceedings below. He does not point us to any documentation, hearing or evidence, and he

does not provide us with any specific reference to such. Moreover, we cannot find any support for his assertion that he filed or even attempted to file "supplemental" documents in our Court that would prove his claim, or that we denied the same. A review of our own records in this cause does not show any docket entry that Travis sought or motioned to file anything other than the common law record containing the parties' filings in the trial court and that court's written orders, including the order appealed from; a report of proceedings that contains only the transcript of the trial court's colloquy following the December 2018 hearing; a motion for extension of time to file his brief, which we granted; a motion to stay the allocation judgment, which we denied; his appellate brief; and, finally, his reply brief. In that reply brief, Travis presents the following question and repeats it sentiments throughout:

"How can I address substantive issues, if the appeal is sullied by the fact that it will be the only case in Illinois State Appellate case history where the appellate court does not have the transcripts [or] the exhibits from the hearing that rendered the judgement for which I am appealing?"

Clearly, this is not the first, and certainly will not be the last, case in our Court's history where we do not have before us the transcripts from the hearing that produced the judgment from which the appellant appealed. Regardless, the point, which Travis wholly misses, is this: the burden of avoiding such a situation lay directly, and solely, with Travis here and not with the trial court. Accordingly, we cannot find error on the part of the trial court and, therefore, Travis' first contention cannot stand.

¶ 21    Next, Travis asserts error upon the trial court for "using personal e-mail accounts and machines to produce an allocation order EX PARTE." (Emphasis in original.) From what we can gather from this argument, Travis seemingly indicates that, because the trial court's

10

March 24, 2021 allocation judgment is not the same as the proposal for custody he submitted when the trial court asked the parties and guardian to do so before the December 2018 hearing dealing with temporary custody, he insists the allocation judgment, then, must have come from *ex parte* communications between the trial court, Christina and the guardian, of which, he states, he has "evidence." He further takes issue with a supposed lack of "e-mail traffic" between him, Christina, the guardian and the trial court.

¶ 22 Again, we fail to see how this relates to any legal or substantive review of the allocation order from which Travis appeals. Moreover, there is no basis, legal or otherwise, for Travis' argument here. He is referring to a request the trial court made back in December 2018, wherein it asked the parties and the guardian to provide it with parenting proposals each felt would be in A.H.'s best interest. At this time, the trial court was presiding over the parties' divorce proceedings, which were not yet bifurcated, and it was considering a temporary parenting order. In fact, the only transcript Travis has presented on appeal is that of the trial court's colloquy following this hearing. One of the court's very first comments therein confirmed that it had received everyone's proposals, including Travis', and that it had read and considered all of them, but would be going in "a little different way" in fashioning a temporary parenting order since it had been "able to hear the testimony of the parties." The court went on to justify it deviation from the parties' proposed plans by detailing three areas of concern it had about Travis, namely, his falling asleep in court during a hearing involving his son, his possession of 38 guns in a home he sought to share with him and an incident where one was discharged therein, and his inappropriately defensive demeanor. Yet, despite all this, the court granted Travis parenting time, with the option for increased time in the future "[s]hould no incidents occur."

¶ 23    The "evidence" of *ex parte* communications to which Travis refers remains a mystery to this Court, as he makes no offer of proof as to what this might be. What is evident in the record is that, while the December 2018 order seemingly favored Travis in some ways by giving him parenting time and the option to petition for more, something happened between then and the March 24, 2021 order entered two-and-a-half years later. Due to Travis' failure to include the transcript of the allocation hearing in the record, we are not entirely sure what that something or somethings were, other than what we can read in the allocation order itself which, clearly, was not decided in the way Travis had hoped. These things include various violations committed by Travis of previous court orders, including providing A.H., who is just six years old, with toy guns, swords and other weapons; allowing him to play with lighters and knives; smoking (medical) marijuana in front of A.H. and allowing A.H. access to the accompanying paraphernalia which was to be locked away during his visits; refusing to turn over his guns as ordered by the court; encouraging A.H. to disregard the guardian; and refusing to inform Christina of injuries A.H. sustained while in his care. Also, the court made the following determinations based on the hearing and all the evidence before it: Christina was credible; Travis was not credible; Travis was "erratic and reckless" and "without any consideration or regards for behavior;" Travis brought a bullet into the courtroom; and Travis continues to "engage in conduct that endangers the child's mental, moral, and physical health, and that the same has significantly impaired the child's emotional development." It was from all this, and not from any alleged *ex parte* communications, that the court found that Travis "has been unable to develop the skills necessary and make the choices to appropriately care for the minor child" and issued the allocation judgment giving Christina sole custody and Travis only supervised parenting time.

¶ 24    Additionally, inasmuch as Travis asserts error on the trial court for "using personal e-mail accounts and machines" to "produce" this alleged *ex parte* allocution order, we have already pointed out that it was Travis who elected to receive all court notifications via his personal email account. The record on this point is unmistakably clear, as it contains his *pro se* appearance form filed in the trial court after his counsel withdrew. On the form, Travis provided his home address and phone number as contact information, and he checked the box that states as follows:

> "Pro se Only: I have read and agree to the terms of the *Clerk's Office Electronic Notice Policy* and choose to opt in to electronic notice from the Clerk's Office for this case."

Immediately below this, Travis listed his personal email address on the line provided. Upon our review, the record indicates that every document filed in the trial court following the entry of Travis' *pro se* appearance, including the March 24, 2021 allocation judgment he appeals, was served to him, as he specifically requested, via his personal email address. Therefore, and again, we fail to see how Travis' assertion of error in this regard can stand.

¶ 25    Lastly, Travis contends that the trial court erred by charging him fees for documents not related to his case and then refusing to refund those fees. He insists that the common law record filed herein contains "numerous pages that are not related to" his case and that he brought this to the attention of the court clerk, but the clerk "REFUSED to issue a refund or audit *** thereby causing overburdensome financial strain" upon him. (Emphasis in original.) This is all Travis states with respect to this contention. He does not specify to which pages of the record he is referring or how they are "not related" to this cause. He does not include any sort of receipt demonstrating payment he made to the clerk nor any

documentation showing he asked for a refund. Instead, in our view, the documents presented in the common law record were necessary to a review of this cause. Considering that the record here is already incomplete, we would have been at even more of a loss in reviewing this appeal without the pages that are present. And, to the extent Travis is insinuating that pages are erroneously included in the record, *i.e.*, from a different cause or involving different parties (as sometimes can mistakenly happen), we have scoured the record herein and can confidently say this is not the case.

¶ 26       As a final point, even were we to put to the side everything we have discussed herein, and even were we to substantively review the trial court's allocution judgment of March 24, 2021, we would not reverse it nor grant any of the other relief Travis requests on appeal. Briefly, we have already noted that without a complete record, and particularly in cases involving custody determinations which lay within the broad discretion of the trial court, we presume upon review that the trial court acted in accordance with the facts and the law and issued a proper decision. See *Foutch*, 99 Ill. 2d at 391-92; *Marriage of Debra N. and Michael S.*, 2013 IL App (1st) 122145, ¶ 45; *Corral*, 217 Ill. 2d at 156. Travis' erroneous insistence that the trial court made mistakes "in applying the law" and that, therefore, we must review his claims *de novo* pursuant to "strict scrutiny" under the authority of the "US Constitution" does not change this, nor do his consistent references to his *pro se* status and insinuations that this absolves him from the rules of law and procedure. See, *e.g.*, *Voris*, 2011 IL App (1st) 103814, ¶ 8 (compliance with rules governing appellate procedure is compulsory regardless of a party's status). Ultimately, the trial court made clear at the outset of its written order that it issued the allocation judgment following a hearing at which both parties were present and participated, and during which it was able to discern their credibility

14

and make findings directly upon the testimony and evidence presented.  Based on the record Travis has submitted before us, we cannot, and will not, ask for more on the part of the trial court and, instead, find that its decision was wholly proper.

¶ 27                                   CONCLUSION

¶ 28        Accordingly, for all the foregoing reasons, we affirm the judgment of the trial court.

¶ 29        Affirmed.