2022 IL App (1st) 210071-U

THIRD DIVISION
June 1, 2022

No. 1-21-0071

IN THE APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE CITY OF CHICAGO, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | Appeal from |
| | ) | the Circuit Court |
| MARY GIPSON and OZAY MCNEELY, and ALL | ) | of Cook County |
| UNKNOWN OWNERS AND NON-RECORD CLAIMANTS, | ) | |
| | ) | 2017-M1-402735 |
| Defendants, | ) | |
| | ) | Honorable |
| and | ) | Patrice Ball-Reed, |
| | ) | Judge Presiding |
| AGWU MONG, | ) | |
| | ) | |
| Defendant-Appellant | ) | |

JUSTICE McBRIDE delivered the judgment of the court.
Justices Ellis and Burke concurred in the judgment.

O R D E R

¶ 1 *Held*: Appeal dismissed for lack of jurisdiction where *pro se* defendant appealed from two nonfinal orders approving receiver's interim accountings, and a third nonfinal order denying defendant's motion to dismiss the proceedings, anticipating additional motions, and scheduling dates for case management and hearing.

¶ 2 This is an appeal from three consolidated actions involving *pro se* defendant-appellant Agwu Mong. The first action, 2017-M1-402735, was filed by the City of Chicago against the owners of residential property at 5415 West Rice Street, Mary Gipson, and her husband,

Ozay McNeely, regarding violations of the Buildings and Construction Code of Chicago which rendered the property unsafe and a public nuisance. See Chicago Municipal Code § 13-12-020. The second action against the property owners, 2017-M1-403351, concerned conditions directly affecting tenants of the property and indicated that gas service was shut off, neither adequate heat nor hot water were supplied, and there were no working smoke detectors. Mong's name was a handwritten addition to that complaint, as the purported agent in possession and control of the property.[1] The two housing court suits were consolidated and an amended complaint was filed against Mrs. Gipson, Mr. McNeely, and Mong. The third action, 2017-M1-720338, was Mong's eviction suit against the then-tenants of the property's second floor.

¶ 3     We are only somewhat informed of the history of the latter two actions because those case numbers were omitted from the record submitted for our review. Instead, the record on appeal includes an unrelated case with a similar number, 2017-M1-720383, *Mas Tequila, LLC v. Betran 6, Inc., a/k/a Pelly's Liquors*, which is an eviction action concerning commercial property at 3444 North Lincoln Avenue, Chicago. Appellant Mong has the burden of presenting a sufficiently complete record on appeal to support his claim of error. *Webster v. Hartman,* 195 Ill. 2d 426, 432 (2001).

¶ 4     According to the City, Mong sued the upstairs tenants after they "cooperated with the City and testified in Court at a hearing on November 30, 2017 which resulted in a limited

---

[1]   We characterize Mong as only the purported agent of the property owners because the circuit court was dubious of Mong's authority and it is unclear whether that question has been resolved. Mong testified that the property owners were elderly, Mr. McNeely moved "down south" and Mrs. Gibson subsequently died in the residence, but Mr. McNeely "wants [Mong] to continue on with renting it out." Mr. McNeely testified, though, he did not agree to allow Mong to manage the property, but Mong said he "paid some taxes and stuff, and the building was [Mong's]." Mrs. Gipson's death certificate was included in the record and indicates she died on January 18, 2014.

1-21-0071

receiver being placed on the property." The record discloses that after the tenants were served, they filed a motion to transfer Mong's eviction action to housing court for consolidation, and the motion was granted. The record also indicates that the limited receivership which the court initially established to restore heat and water service was continued and it appears that the receiver is still managing the property, nearly five years later.

¶ 5　We are considering Mong's appeal on his brief only, after the City informed us that it does not intend to file a brief. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976) ("if the record is simple and the claimed errors are such that the court can easily decide them without the aid of an appellee's brief, the court of review should decide the merits of the appeal").

¶ 6　Mong's notice of appeal indicates he is appealing from an order entered on December 3, 2020. (Mong misspelled Mrs. Gipson's last name as "Gibson" in his notice of appeal and other documents filed in the circuit court.) We found three orders bearing that date in the record.

¶ 7　In the first order, which concerns the receiver's work between July 9, 2019 and December 16, 2019, the circuit court approved the receiver's petition for $1727 and authorized issuance of a third receiver's certificate against the property.[2]

¶ 8　In the second order, which concerns the receiver's work between December 17, 2019 and July 14, 2020, the circuit court approved the receiver's petition for $2786 and authorized issuance of a fourth receiver's certificate against the property.

---

[2] The Illinois Municipal Code indicates that if a judge orders the appointment of a receiver to cause a building to conform with minimum standards of health and safety, "such receiver may use the rents and issues of such property toward maintenance, repair and rehabilitation of the property *** and the court may further authorize the receiver to recover the cost of such maintenance *** by the issuance and sale of notes or receiver's certificates." 65 ILCS 5/11-31-2 (West 2020).

¶ 9    The third order addresses numerous issues, such as a briefing schedule for the receiver's fifth interim accounting. The court also purged an order of contempt which it had entered against Mong regarding his nonpayment of property taxes for the Rice Street property. The court granted the City leave to file a petition for rule to show cause against Mong for his failure to abide by an order to conduct a property inspection with the municipality's department of buildings; and, the court ordered Mong to conduct that property inspection with the municipality on March 17, 2021 between 9:00 a.m. and 10:00 a.m.

¶ 10    In this third order, the court also denied Mong's motion to dismiss the two housing court cases. The motion to dismiss that Mong filed on December 5, 2019 was not included in the record submitted for our review. However, the circuit court order refers to "Mong's Motion to Dismiss filed on December 5, 2019" and the City's response brief dated December 27, 2019 indicates "Mong filed a Motion to Dismiss the housing court cases."

¶ 11    The court listed the reasons it was denying Mong's motion to dismiss including that (1) one of the two property owners, Mrs. Gipson, is deceased, and the other property owner, Mr. McNeely, testified in open court that he has no relationship with Mong and did not contract for his management of the property; (2) Mong has not presented proof that he has paid all the utility bills and established utility service in his name rather than in the names of the receiver and tenants; (3) Mong has not proceeded with permits, plans, or work to remedy the building code violations; and (4) Mong has not shown that the property is his primary residence.

¶ 12    In this same order, the court also declined to lift an order prohibiting Mr. McNeely from "transferring title to Agwu Mong as the Court finds that any such transfer would still be subject to undue influence." The court continued the City of Chicago's motion to vacate the premises of

tenants and other occupants. Finally, the court set the cause for hearing and case management approximately four months later, on March 25, 2021.

¶ 13 In his notice of appeal, Mong asks this court to "grant [his] motion *** to dismiss case due to it being frivolous, abuse of power by city, and enrichment of receiver." Again, we were unable to find Mong's motion to dismiss in the record on appeal and as the appellant, he bore the burden of presenting a sufficiently complete record on appeal to support his claim of error. *Webster*, 195 Ill. 2d at 432. In his docketing statement, Mong states that wants this court to "allow [him] to continue to work [on the condition of the property] without abuse of power and [illegal] wanton acts of from [*(sic)*] corp City [*(sic)*], "[a]llow the Illinois Color of Title to take place for [him], and "[r]everse or adjust all approved accounting from default receiver accounting."

¶ 14 We are obligated to consider our jurisdiction to review a case and to dismiss an appeal when our jurisdiction is lacking. *Fabian v. BGC Holdings, LP*, 2014 IL App (1st) 141576, ¶ 12. Mong purports to appeal from a final order of the circuit court, pursuant to Illinois Supreme Rule 301 (eff. Feb. 1, 1994).

¶ 15 Rule 301 provides that every "final judgment" in a civil case is appealable as of right. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994). The Illinois Supreme Court has defined a final judgment as "a determination by the court on the issues presented by the pleadings which ascertains and fixes absolutely and finally the rights of the parties in the lawsuit" (*Flores v. Dugan*, 91 Ill. 2d 108, 112 (1982)) and as an order that "resolve[s] every right, liability or matter raised" (*Marsh v. Evangelical Covenant Church of Hinsdale*, 138 Ill. 2d 458, 465 (1990)). "If an order does not resolve every right, liability or matter raised, it must contain an express finding that there is no

just reason for delaying an appeal. Otherwise, the order is not appealable." *Marsh*, 138 Ill. 2d at 465. See *Flores*, 91 Ill. 2d at 112 (generally, an appellate court lacks jurisdiction to review interlocutory orders); *Almgren v. Rush-Presbyterian-St. Luke's Medical Center*, 162 Ill. 2d 205, 210 (1994) (citing Ill. Const. 1970, art. VI, § 6 and stating the Illinois constitution provides for appeals as a matter of right from final judgments, there is no corresponding constitutional right to appeal from interlocutory orders, and the Illinois constitution authorizes the supreme court to provide for interlocutory appeals as it sees fit).

¶ 16    Once the circuit court enters a judgment disposing of all the issues as to all the parties, such an order becomes final and appealable, and a party has 30 days either to file a notice of appeal or a postjudgment motion. Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017); *Brentine v. DaimlerChrysler Corp.*, 356 Ill. App. 3d 760, 765 ( 2005).

¶ 17    Unless provided by statute or supreme court rule, a court of review lacks jurisdiction to review nonfinal judgments, orders, or decrees. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994) ("Every *final* judgment of a circuit court in a civil case is appealable as of right" (emphasis added)); *EMC Mortgage Corp. v. Kemp*, 2012 IL 113419, ¶ 9 (generally, an appellate court lacks jurisdiction to review interlocutory orders). The various purposes behind Rule 301 include "discourag[ing] piecemeal appeals in the absence of a just reason." *Marsh*, 138 Ill. 2d at 458.

¶ 18    None of the three orders that were entered on December 3, 2020 are final, appealable orders. The first two orders are nonfinal orders in which the court approves the receiver's fee petitions and authorizes the issuance of receiver's certificates. As for the third order, there are multiple indications in it that the proceedings are ongoing and have not reached their final resolution. For instance, the circuit court anticipates the filing of the receiver's fifth petition. The

circuit court also anticipates the filing of a petition for rule to show cause and a municipal inspector's visit to the property with Mong to determine the building's condition as well as his plans and permits to bring the property into compliance with municipal standards. There is also the fact that the circuit court set a date approximately four months in the future "for hearing and case management" on March 25, 2021. Another indication of the nonfinal nature of the third order is that the circuit court denied Mong's motion to dismiss. This means that the housing court cases are still pending resolution in the circuit court. See *Marsh*, 138 Ill. 2d at 465 (a final judgment is one which the court has resolved "every right, liability or matter raised"). Furthermore, it is well settled that the denial of a motion to dismiss is not a final judgment. *Walker v. Carnival Cruise Lines, Inc.*, 383 Ill. App. 3d 129, 132 (2008) (a circuit court's denial of a motion to dismiss is an interlocutory order that is not final and appealable); *Desnick v. Dep't of Professional Regulation*, 171 Ill. 2d 510, 540 (1996) (same); *Saddle Signs, Inc. v. Adrian*, 272 Ill. App. 3d 132, 135 (1995) (the denial of a motion to dismiss does not fall within the scope of any of the Supreme Court Rules regarding interlocutory appeals); *Chicago Housing Authority v. Abrams*, 409 Ill. 226, 228-29 (1951) (it is well settled that the denial of a motion to dismiss is an interlocutory order). It is apparent from this record that the proceedings are ongoing and incomplete.

¶ 19    Mong's notice of appeal in which he asks that we "grant [his] motion *** to dismiss [the] case" seems confined to the third order that the circuit court entered on December 3, 2020. However, in his docketing statement, Mong refers to the receiver's fee awards, stating that he wants the appellate court to "[r]everse or adjust all approved accounting from default receiver accounting." To the extent that Mong is attempting to appeal the first and second orders that the

court entered on December 3, 2020 (concerning the receiver's third and fourth interim accountings), we lack jurisdiction to review those orders because they are not final and appealable under any rule. The receiver's interim petitions are analogous to the interim attorney fee petitions addressed in cases such as *In re Marriage of Arjmand*, 2017 IL App (2d) 160631, ¶ 19, *In re Marriage of Gabriel & Shamoun*, 2020 IL App (1st) 191840, ¶ 12, and *In re Marriage of Tetzlaff*, 304 Ill. App. 3d 1030, 1038 (1999). Those cases suggest that if orders addressing interim attorney fee awards were immediately appealable, this court would be burdened with numerous interim fee appeals. *Tetzlaff*, 304 Ill. App. 3d at 1039. The same observation holds true in this type of case, particularly when the receiver of 5415 West Rice Street has petitioned the circuit court at least twice a year and at least four interim awards have been entered. A fifth interim accounting was ordered for the period July 15, 2020 to December 31, 2020, which was about 17 months ago. If the receiver's twice-annual pattern has held true, there may be at least four more interim award orders regarding the receiver's management of the Rice Street property.

¶ 20    As we pointed out above regarding the supreme court rule which Mong cited as the basis for this appeal, Rule 301, the rule is intended to discourage piecemeal appeals, in the absence of a compelling reason. *Marsh*, 138 Ill. 2d at 458. It is our view that multiple appeals from the receivership would unnecessarily complicate these housing court proceedings, delay resolution of the case, and burden all involved. See *Tetzlaff*, 304 Ill. App. 3d at 1039 (discussing reasons for circuit courts to resolve dissolution of marriage proceedings in a single judgment).

¶ 21    The three orders entered on December 3, 2020 indicate that the circuit court has not yet "resolve[d] every right, liability or matter raised" (*Marsh*, 138 Ill. 2d at 465) in the three pending, consolidated actions concerning Mr. McNeely, Mong, the City, and 5415 West Rice

Street. Accordingly, none of the orders bearing that date are now appealable (*Marsh*, 138 Ill. 2d at 465) and we lack jurisdiction to review their merits at this time (*EMC Mortgage*, 2012 IL 113419, ¶ 9).

¶ 22     For these reasons, we dismiss Mong's appeal.

¶ 23     Appeal dismissed.